## Reading City *v.* Davis, Appellant.

[Marked to be reported.]

*Municipalities—Eminent domain—Exclusive possession—Trespass.*

Where a municipal corporation condemns land for a public purpose, the municipality has the right to the exclusive possession of the land, and if the former owner attempts in any way to use it, even though his use may not interfere with the public use, he renders himself liable to nominal damages, at least, in an action of trespass.

A portion of defendant's farm was condemned by a municipal corporation for the purposes of a pumping station. About an acre of the land condemned was a narrow strip running alongside of a railroad, and used as a lane to connect the pumping station lot proper with a highway. Defendant was allowed to retain a right to cross the lane at a point where he had been accustomed to cross the railroad in passing from one part of his farm to the other. The lane in the narrow strip extended along the railroad back into the main part of the pumping-house lot. Without the city's permission, defendant began to drive his wagons over the portion of the land in the main part of the pumping-house lot, but without interfering with the city's use of the pumping plant. *Held*, that such use was an invasion of the city's right of property, and that a judgment in trespass for nominal damages should be sustained against defendant.

Pa. Schuylkill Valley R. R. v. Reading Paper Mills, 149 Pa. 18, applied.

Argued Feb. 28, 1893. Appeal, No. 7, Jan. T., 1893, by defendant, Reese Davis, from judgment of C. P. Berks Co., Aug. T., 1890, No. 47, on verdict for plaintiff. Before STER-RETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.

Trespass for driving over land condemned for public use.

The facts appear by the opinion of the Supreme Court.

At the trial, before ENDLICH, J., defendant's points were as follows:

"1. If the jury believe that the driving upon the land described in the declaration, to and from the Pennsylvania Schuylkill Valley Railroad siding as described by Mr. Harper, one of the plaintiff's witnesses, in nowise interfered with or impaired

the full, free, and ample enjoyment of the said property by the city of Reading for the purposes for which it was appropriated by them, the verdict must be for the defendant. " Refused. [1]

" 2. The city of Reading, by the appropriation of the property described in the declaration, secured the right to use the same for the purpose of constructing and maintaining a pumping station and securing water for the said city, but the city's rights are limited to a use of the property for that purpose, and the defendant remained and is the owner of the same, with a right to use it or any part of it, provided his use does not in any manner, directly or indirectly, and to the slightest degree interfere with or obstruct the use of the said property for the purposes for which the city took the same. " Refused. [2]

The court charged in part as follows :

[" The defendant having passed into this road or lane belonging to the city, instead of crossing over it, passed along and over the property of the city of Reading for quite a considerable distance to reach a siding of the Pennsylvania Railroad at the further end or beyond the line of the city's property, which he had no right to do, under the view the court takes of the law of this case.] [3] [There are no disputed facts ; there were no substantial damages, nor does the city ask for such, for all the defendant did was to commit a technical trespass. On that ground you will have to find for the plaintiff."] [4]

Verdict and judgment for plaintiff for six cents damages and costs. Defendant appealed.

*Errors assigned* were (1–4) instructions, quoting them.

*Cyrus G. Derr*, for appellant.—The nature, character and extent of the interest acquired by the city to defendant's lands must be measured by the language and terms of the acts of assembly under which the condemnation was made : Haldeman v. Pa. R. R., 50 Pa. 430.

The words " take, occupy, and enjoy," " with full power to hold for the purposes above mentioned "—that is, for the securing of a supply of water—used in the act of 1874—do not import an absolute estate in fee simple, but confer a qualified interest merely limited to such purposes. Neither do the words of the act of 1889, if said act were applicable, nor the words of any of the other acts applicable, import anything be-

yond such qualified interest: Quimby v. Vermont Central R.
R., 23 Vt. 393 ; Washington Cem. Co. v. P. P. & C. I. R. R.,
68 N. Y. 593 ; Pittsburgh etc. R. R. v. Bruce, 102 Pa. 23 ; West-
ern Pa. R. R. v. Johnston, 59 Pa. 293 ; Union Canal Co. v.
Young, 1 Whart. 410 ; Haldeman v. Pa. R. R., 50 Pa. 425 ;
Cooley, Const. Lim. *559.

The city of Reading having acquired said land for the pur-
pose of erecting and maintaining a pumping station, and secur-
ing an additional supply of water, defendant may use it for
any purpose which will not, in the language of appellant's sec-
ond point, " in any manner, directly or indirectly, and in the
slightest degree, interfere with or obstruct the use of the said
property for the purpose for which the city took the same : "
Pa. Schuylkill Valley R. R. v. Reading Paper Mills, 149 Pa.
18 ; Cooley, Const. Lim. 691; Conklin v. Old Colony R. R.,
28 N. E. R. 143 ; Hasson v. Oil Creek etc. R. R., 8 Phila. 556 ;
Clark v. Worcester, 125 Mass. 226.

*William J. Rourke*, city solicitor, for appellee.—There is no
distinction between the case of the Pa. Schuylkill Valley
R. R. v. Reading Paper Mills, 149 Pa. 18, and the present
case, because the railroad act of 1868, conferring the powers
of eminent domain upon the said railroad company, and the
municipal act of May 23, 1889, P. L. 277, conferring the
powers of eminent domain upon the municipality of the city
of Reading, invest both corporations with like powers.

Whether the interest acquired in the said premises under
the condemnation proceedings, be, technically, an estate in fee
simple, an absolute estate in perpetuity or a mere easement, is,
under our view and conception of the law, absolutely immate-
rial. What we contend for is, under any aspect of the law,
the city has the right to exclusive possession, to fence in, to
build over the whole surface, to raise and maintain any appro-
priate superstructure, including necessary foundations, and to
deal with it, within the limits of city uses, as absolutely and as
uncontrolled as an owner in fee : 1 Harris on Damages by
Corporations, § 54.

While it has been decided in the case of Spear v. Allison,
20 Pa. 200 ; Shamokin Valley R. R. v. Livermore, 47 Pa. 465 ;
and the Western Pa. R. R. v. Johnston, 59 Pa. 294, that the

right of a railroad company to occupy land upon which its road was located was but an easement, yet those cases never called for an adjudication of the question here presented. They were simply decisions bearing upon what passed under a sheriff's sale. And again, Lance's Ap., 55 Pa. 16, and Mayor of Allegheny v. Ohio & Penna. R. R., 26 Pa. 355, simply decided that after the right has been exercised, the use of the property must be held in accordance with and for the purpose which justified its taking, and that the public corporation could not erect buildings not necessarily connected with the use of their franchises, within the limits of the right of way.

The city has the exclusive right to the use and possession of the land: Junction R. R. v. Boyd, 8 Phila. 224; R. R. v. Holton, 32 Vt. 47; Jackson v. R. & B. R. R. Co., 25 Vt. 157; Penna. R. R. Co. v. Freeport Boro., 138 Pa. 95.

OPINION BY MR. CHIEF JUSTICE STERRETT, March 13, 1893:

By regular legal proceedings, promoted by the city of Reading, part of defendant's farm—over twelve acres—was condemned in 1890 for the purposes of a pumping station; and, as compensation therefor, the sum of nine thousand five hundred dollars was awarded and paid to him. About an acre of the land thus taken consists of a narrow strip, extending more than half its length along the Pennsylvania Schuylkill Valley Railroad, used as a lane connecting the pumping station lot proper with the highway. By the concession of the city's representatives, the defendant retained the right to cross the lane at a point indicated on the appropriation plot about one thousand feet northwesterly from Hartman's land, where he had been accustomed to cross said railroad in passing from one part of his farm to the other. On the residue of the land taken, the pumping plant, a dwelling-house and stable were erected. On same land, adjoining the railroad, there was formerly a driveway, extending from said railroad crossing about one thousand feet northwesterly to a siding on the railroad company's land; and, on the bed of that old driveway, the city has a temporary road or lane. Sometime in 1890, defendant, claiming the right to do so, drove his manure wagons over the last mentioned road to said siding, loaded them there with manure and returned, by the same route, to his farm. These

acts of defendant did not interfere with the city's pumping operations, or its use of the pumping plant, but they were regarded as an invasion of its right of property, etc., and this action of trespass was brought to determine that question. Two distinct acts of trespass were charged: One was, cutting down plaintiff's fence, etc. As to this, it was shown that, by the terms of said concession, defendant had a right to remove the obstruction to his crossing at that point, and thus, that item was eliminated. The other act of trespass consisted in driving and hauling manure over the city's private lane or road, between the railroad crossing and said siding. There being no conflict of testimony as to that, the learned judge instructed the jury that, without the plaintiff's permission, defendant had no right to use the lane; that the use he made of it was at least a technical trespass, and he accordingly directed a verdict in favor of the plaintiff for nominal damages.

The learned judge's charge on that subject was as follows:

" The defendant having passed into this road or lane belonging to the city, instead of crossing over it, passed along and over the property of the city of Reading for quite a considerable distance to reach a siding of the Pennsylvania Railroad at the further end or beyond the line of the city's property, which he had no right to do, under the view the court takes of the law of this case."

" There are no disputed facts; there were no substantial damages, nor does the city ask for such, for all the defendant did was to commit a technical trespass. On that ground you will have to find for the plaintiff; but your verdict will be nominal damages."

These instructions constitute the third and fourth specifications. The first and second are the refusal of the court to charge as requested in defendant's first and second points recited therein.

The first is, in substance, a request to charge that if the jury find defendant's driving upon the property " in nowise interfered with or impaired the full, free and ample enjoyment of the said property by the city of Reading for the purpose for which it was appropriated, the verdict must be for the defendant."

The substance of the second point is, that notwithstanding the property was legally appropriated by the city, etc., " the de-

fendant remained and is the owner of the same, with a right to use it or any part of it, provided his use does not in any manner, . . . . interfere with or obstruct the use of said property for the purposes for which the city took the same."

These points clearly indicate the difference between the defendant's contention and the rulings of the learned trial judge. We have no doubt the latter was right in holding that under and by virtue of the condemnation proceedings the city acquired the right of exclusive possession and enjoyment of the property in question, subject only to the conceded right of crossing the lane above referred to. The character of the city's title is similar to that acquired by railroad and other corporations invested with the power of eminent domain. It is sometimes called an easement, but that does not adequately express the nature and extent of the title thus acquired. Speaking of the title to property taken for railroad purposes, our brother MITCHELL recently said: "It is a right to exclusive possession, to fence in, to build over the whole surface, to raise and maintain any appropriate superstructure, including necessary foundations, and to deal with it within the limits of railroad uses, as absolutely and as uncontrolled as an owner in fee. There was no such easement at common law, and it may well be doubted if it is not a misnomer to extend to this newly-invented interest in land the name of easement, perhaps appropriate enough to the railroad's ordinary right of way for its tracks. It would seem to be rather a fee in the surface and so much beneath as may be necessary for support, though a base or conditional fee, terminable on the cesser of the use for railroad purposes. But whatever it may be called, it is, in substance, an interest in the land, special and exclusive in its nature, and which may be the subject of special injury:" Pa. Schuylkill Valley Railroad Co. v. Reading Paper Mills, 1 Adv. R. 730 [149 Pa. 18].

This applies with equal, if not greater, force to land taken for the purpose of a pumping station connected with the city's water-supply system. For such a purpose, extensive and exclusive sub-surface rights are quite as important as surface privileges, right of support, etc. Joint possession or user with the former owner of the land, or with any one else, is incompatible with the successful operation of such a plant; but, aside

from all that, there is nothing whatever in this case on which to ground a claim such as is here set up by the defendant. He was fully compensated for the land taken for a public purpose; and he had no more right to enter upon the pumping station lot, without permission from the city authorities, than any entire stranger would have had. His entry upon the land was an invasion of the city's right of property, which rendered him liable to at least nominal damages: Wall v. Pittsburgh Harbor Co., 152 Pa. 432.

Judgment affirmed.