ABBIE E. C. WRIGHT *vs.* HARTWELL L. WOODCOCK and others.

Waldo.　Opinion December 20, 1893.

*Water Companies.　Easement.　Exclusive Possession.　Ice.　Trover.
Special Laws, 1887, c. 94.*

A water company having by authority of its charter taken, as for public uses, land and the water of a stream flowing through it for the purpose of obtaining a sufficient supply of water and for the construction of reservoirs, is

entitled to the exclusive possession of such land and to the enjoyment of such riparian rights as appertain to the land.

The original owner cannot maintain an action against any person for taking ice from the stream flowing through such land, as such taking is no injury to the reversion.

ON REPORT.

This was an action of trover for the conversion of a quantity of ice.

The defendants admitted the taking and conversion but justify under a contract with the Belfast Water Company.

The Water Company, by authority granted by its charter, took and flowed lands of the plaintiff lying upon Little River in Northport for the purpose of obtaining a water supply for the city of Belfast. The ice in controversy was taken from the waters of the pond so flowed which covered the plaintiff's land so taken and flowed, and the right to take the ice in question was sold, at an agreed price per ton, by the Water Company to the defendants by whom it was harvested and sold.

The question to be determined was whether the ice when it was formed belonged to the plaintiff or to the Water Company.

*Wm. H. Fogler,* and *Wm. P. Thompson,* for plaintiff.

*John C. Coombs, Joseph Williamson* and *W. M. Payson,* for defendants.

SITTING : PETERS, C. J., WALTON, EMERY, FOSTER, HASKELL, WHITEHOUSE, JJ.

EMERY, J. The Belfast Water Company was incorporated by ch. 94 of Special Acts of 1887, "for the purpose of furnishing to the people of Belfast a supply of pure water for domestic, mechanical and manufacturing purposes, and to the city of Belfast, water for the extinguishment of fires and other public uses." To effect these purposes, the company was authorized by its charter to "take as for public uses any real estate or easement therein, including the water of any ponds, streams, springs, or artesian wells, necessary for obtaining a sufficient supply of water, for the construction of reservoirs, and the laying of pipes," &c. It was also authorized to "erect and maintain all necessary

dams, reservoirs, stand-pipes and hydrants." Under this charter the company took from various owners, in the manner provided; in the charter, and for the purposes therein named, a strip of land on each side of a stream called Little River in Northport. The land taken extended from near the mouth of the stream up both sides of the stream some two thousand feet, more or less, and included upland on each side of the stream, and the flats and the land under the stream. The company also in the same way condemned "the water of the stream."

A section of this strip of land was taken from the plaintiff out of a larger parcel of land belonging to her. The section taken from her was about one hundred feet wide including upland, the flats and the land under the stream to the middle line of the stream. The tides of the sea flowed at highwater up this stream, past the plaintiff's land, but ebbed entirely out at low water leaving only the fresh water stream. The plaintiff sought for, and obtained payment of her damages for this taking of her land.

The company afterward built a dam across the stream below the land taken from the plaintiff, by which dam an artificial pond of fresh water was formed, and the inflow of the salt water was prevented. From this pond, the water was pumped into the company's pipes to supply the people and the city. Ice was cut and removed by persons in the employ of the company, from that part of the artificial pond over the strip of land taken from the plaintiff. For this removal of ice, this action of trover was begun by the plaintiff, and is brought to the law court on report.

The plaintiff, before the condemnation of her land, had no property in the water of the stream either in its liquid or frozen state. Her rights in either kind of water were simply those of an ordinary riparian owner, to take of the water, as it flowed past or rested upon her land, such limited quantity as would not appreciably diminish the flow or supply to the riparian owners below. In the absence of modifying deeds or contracts, this riparian right is annexed to the possession of the land, and belongs to and may be exercised by the tenant in possession, however small his estate, even if he be tenant at will only. It is evident, there-

fore, that if the company after condemnation, became the tenant in possession of this strip, and had the right of exclusive possession, then this action cannot be maintained, as there was no injury to the reversionary interest. We think the company did become at least a tenant in possession and has the right of exclusive possession so long as it occupies the strip for the purposes for which the land and water were taken.

The plaintiff urges that her remaining rights in the land and water are equal and similar to those of a riparian owner whose land is flowed under the Mill Act and she confidently cites *Stevens* v. *Kelley*, 78 Maine, 445. There is, however, a manifest difference between the two cases and the two situations. Under the Mill Act, the mill owner is not authorized to take land, nor does he assume to take land. He is merely authorized to flow the land, and that is all he assumes to do. The land owner retains his possession, and with it all his riparian rights, except the right to have the water flow from his land as freely as it naturally would. The flowing of his land puts no other restraint upon his use of the water.

The plaintiff again likens her right to that of a land owner, over whose land a highway has been laid out. She cites many cases illustrative of that right. Here again the difference is plainly seen. When a road is located, the land is not "taken" in the technical sense of that term. No authority is given any person or corporation to "take" land for a highway. The highway is located or "laid out" over the land directly by public authority. Such laying out is simply imposing a public easement upon the land. The public acquire only the right of passage, with the incidental right of facilitating that passage by constructing and keeping in repair a road within the lines of the location. The exercise of this right by the public does not ordinarily require the continual and exclusive occupation of the entire width of the location, hence the land owner retains such rights of possession, as the public does not need.

The Belfast Water Company is required by its charter to furnish the city and people of Belfast with an abundant supply of pure water, at all seasons. It must care for the quality, as well

as the quantity of water to be supplied. It must, therefore, provide large reservoirs for the storage of water, and must guard the water in them against all danger of contamination. It has made a reservoir of large extent by taking land for a long distance under and on both sides of Little River and by building a dam near its mouth. This reservoir it must maintain, control and guard at all times, so as to preserve the quantity and purity of the water. To do this, requires in the company the right of exclusive possession of all the land under and about the pond, or reservoir, — of all the land taken. It must have the right to keep every person away from the water and the reservoir. *City of Reading* v. *Davis*, 153 Pa. St. 360, (26 Atl. Rep. 62.) The riparian rights which the plaintiff insists that she retains are the very rights the company most needs to effectuate the purposes of its charter. They are the rights which the company sought for in selecting the land taken. It is to be presumed that the value of these attendant riparian rights was considered in the appraisal of the damages and was included in the award. *Ham* v. *Salem*, 100 Mass. 350. By its condemnation of this land, the company has paid for and obtained not the fee perhaps, but certainly something more than a mere easement in the land. It has acquired the right of exclusive occupation and with this all the attendant riparian rights for such time as it holds the land under its charter.

The rights of a water company in land taken for the purposes of its charter are analogous to those of a railroad company in land taken for its railroad. The rights of the latter to the exclusive possession of such land are satisfactorily expounded in *Hayden* v. *Skillings*, 78 Maine, 413 ; *Lander* v. *Bath*, 85 Maine, 141 ; and in *Pierce* v. *B. & L. R. R.* 141 Mass. 481. These cases will shed light upon the question which has been considered here.

It follows that the plaintiff cannot maintain this action.

*Plaintiff nonsuit.*