*In re* MONTGOMERY *et al.*

(*District Court, D. New Jersey. January 19, 1892.*)

1. EMINENT DOMAIN—CONDEMNATION FOR USE OF UNITED STATES—PLEADING.
   Under Act Cong. Aug. 1, 1888, authorizing officers of the government to condemn lands for the use of the United States, a petition for condemnation must affirmatively show that the officer is authorized by congress to acquire the lands, and that in his opinion it is "necessary or advantageous" to proceed by judicial process; and these facts cannot be inferred from an allegation that such officer has requested the attorney general to institute such proceedings.

2. SAME—EXERCISE OF RIGHT BY UNITED STATES—CONSTITUTIONAL LAW.
   Act Cong. March 3, 1891, authorizes the secretary of war to modify existing plans for the excavation of Petty's island and the adjacent shoals, in the Delaware river, but declares that the title to any additional lands required for this purpose shall be vested in the United States without charge. *Held* that, in view of this latter provision, the United States has no constitutional power to acquire the lands by condemnation proceedings.

In Equity. Petition for the condemnation of lands belonging to Thomas Montgomery and others, for the use of the United States. Heard on motion to quash the petition for appointment of commissioners. Petition dismissed.

*W. C. Hannis,* for motion.

*H. S. White,* Dist. Atty., *J. Warren Coulston, Joseph K. McCammon,* and *C. V. D. Joline, contra.*

GREEN, J. By an act of the congress of the United States, approved April 24, 1888, entitled "An act to facilitate the prosecution of works projected for the improvement of rivers and harbors," it was enacted that the secretary of war may cause proceedings to be instituted in the name of the United States in any court having jurisdiction of such proceedings, for the acquirement by condemnation of any land, right of way, or material needed to enable him to maintain, operate, or prosecute works for the improvement of rivers and harbors, for which provision has been made by law; such proceedings to be prosecuted in accordance with the laws relating to suits for the condemnation of property of the states wherein the proceedings may be instituted: provided, however, that when the owner of such land, right of way, or material shall fix a price for the same, which, in the opinion of the secretary of war, shall be reasonable, he may purchase the same at such price without further delay: and provided further, that the secretary of war is hereby authorized to accept donations of land or materials required for the maintenance or prosecution of such works. By another act, entitled "An act to authorize condemnation of land for sites of public buildings, and for other purposes," approved August 1, 1888, it was further enacted that in every case in which the secretary of the treasury, or any other officer of the government, has been, or hereafter shall be, authorized to procure real estate for the erection of a public building, or for other public uses, he shall be, and hereby is, authorized to acquire the same for the United States by condemnation under judicial process, whenever in his opinion it is necessary or advantageous to the government to do so ; and the United States circuit or district courts of the district wherein such real estate is located shall have jurisdiction of proceedings for such condemnation, and it shall be the duty of the attorney general of the United States, upon every application of the secretary of the treasury, under this act, or such other officer, to cause proceedings to be commenced for condemnation within 30 days from the receipt of the application at the department of justice. And by said act it was provided that the practice, pleadings, forms, and modes of proceedings in causes arising under the provisions of this act shall conform as near as may be to the practice, pleadings, forms, and proceedings existing at the time in like causes in the courts of record of the state within which such circuit or district courts are held, any rule of the court to the contrary notwithstanding. By another act, entitled "An act making appropriations for sundry civil expenses of the government for the fiscal year ending June 30, 1889, and for other purposes," approved October 2, 1888, it was, *inter alia,* provided that for the removal of Smith's island and Windmill island, in the state of Pennsylvania, and Petty's island, in the state of New Jersey, or such parts of them and the shoals adjacent thereto as may be required, and for the improvement of the harbor between the cities of Philadelphia, Pa., and Camden, N. J., the sum of $500,000 should be appropriated : provided, that no part of said sum should be expended until the title to the lands forming said islands should be acquired and vested in the United States, without charge to the latter beyond $300,-

000 of the sum appropriated. By another act, approved March 3, 1891, entitled "An act making appropriations for sundry civil expenses of the government for the fiscal year ending June thirteenth, eighteen hundred and ninety-two, and for other purposes," it was enacted that for improving harbor at Philadelphia, Pa., and continuing the improvement, and for the removal of Smith's island and Windmill island, Pennsylvania, and Petty's island, New Jersey, and adjacent shoals, $300,000 were appropriated: provided, that the plan for the improvement may be modified by changing the line limiting the excavation on Petty's island to such position as the secretary of war may consider desirable, and the material to be removed from said islands and shoals under this appropriation and appropriations heretofore made, shall be deposited and spread on League island, and to the extent of the cost of such deposit and spreading the said appropriations are hereby made available: provided further, that the title to any additional lands acquired for this purpose shall be vested in the United States without charge to the latter.

Under the various acts above referred to, the present proceedings were begun by way of petition to this court upon the request of the secretary of war, and by direction of the attorney general, to obtain possession by condemnation of the lands, right of way, and material set out and described in the said petition for the purpose of improving the navigation of the river Delaware at or near the city of Philadelphia. The petition, reciting the acts hereinbefore set forth, alleges that the secretary of war, under the provisions of the act last above referred to, had approved modifications of the project for improving the harbor of Philadelphia by changing the line of excavation which had previously been adopted by the department in making said improvement, which modifications necessitated the acquisition by the United States of about 23 acres of land, parcel of Petty's island, in addition to that theretofore acquired; that, to acquire said lands, the secretary of war had requested the attorney general of the United States to commence these proceedings in condemnation according to the acts in such case made and provided, and that the petitioner, by its duly-authorized officials, had elected to conform said proceedings on condemnation to those authorized by the act of the legislature of New Jersey entitled "An act to authorize the formation of railroad corporations, and to regulate the same," approved April 2, 1873. The petition also described by metes and bounds the lands so required for the said improvement, and the names of the persons having an interest, as owners or otherwise, therein. The prayer of the petition was, that notice of this application should be given to the persons who were therein named as interested in said lands, and for the appointment of a particular time and place when and where the court under seal would designate three disinterested, impartial, and judicious freeholders, residents of the county of Camden, N. J., within the limits of which county said lands were alleged to be situate, to be the commissioners to appraise said lands, and to assess the damages to be paid by the United States therefor. Upon the filing of said petition an order was made to show cause why the prayer of the petition should not be granted, and

upon the return-day of said order those who were interested in said lands as owners, by their counsel appeared and moved to quash the said petition, and set aside any proceedings that might have been had thereunder, for the following reasons: (1) The petition fails to show upon its face that the secretary of war had been authorized to acquire the additional lands mentioned in the petition for public use. (2) The petition fails to show that, in the opinion of the secretary of war, it is necessary or advantageous to the United States that the land in question should be acquired by condemnation under judicial process. (3) The petition fails to show that any provision had been made by law to compensate the land-owners for the value of their land, and the damages they might sustain by this appropriation.

It cannot be denied that the petition, as it was originally filed, is open to criticism for the manner in which jurisdictional facts are stated therein. In the case of *In re Rugheimer*, 36 Fed. Rep. 369, which was a proceeding to condemn lands for a public building, it is held by the court that all three of the allegations which it is alleged this petition omits to make are necessary, and must affirmatively appear on the face of the petition for the appointment of commissioners, or the petition will be quashed. A strict criticism of this petition, using the opinion of the court in the case just cited as a criterion, would undoubtedly produce a similar result in this case. There certainly are no distinctive averments in the petition, as originally framed, that the secretary of war had been authorized in law to acquire these lands by condemnation, or that, in his opinion, it was necessary and advantageous to the United States that they should be so acquired. It is true, the petition alleges that the secretary of war had requested the attorney general of the United States to commence these proceedings; and it was argued that such request, made, as it was alleged to be, under the act of August 1, 1888, would carry with it the presumption that he was of opinion it was both necessary and advantageous to the United States to acquire the lands in the manner pointed out by that act; for the only possible authority to make, or justification of, such request, is to be sought for and found in the act referred to, and that act prescribes with precision when and under what circumstances the power of eminent domain is to be called into action at and by his request. As conditions precedent to such request for the institution of condemnation proceedings, the secretary of war must determine affirmatively both the advantage and necessity to the federal government of the possession of the lands sought to be condemned; and, as it is always to be presumed that every officer acts strictly within the limits and upon the lines of his delegated power, it would follow that the request made by the secretary, as stated in the petition, is evidence, presumptively at least, that all conditions precedent to the lawful making of such request have been complied with. This argument is plausible, but unsound. It is a well-settled principle that when the exercise of a special authority, delegated by statute to a particular person or to a special tribunal, is dependent upon conditions precedent, all preliminaries which show fulfillment of such conditions, and which confers upon

such person or tribunal power to act, must clearly appear upon the face of the proceedings. The proper practice is to state affirmatively and with certainty all facts upon which, in such case, jurisdiction depends. Intendment and presumption should not be resorted to for the justification of any judicial proceedings, in derogation of private rights. But it is not necessary, in the present state of the petition, to consider the effect either of this or of the first objection made to it. By consent, and after the argument, the petition was amended by adding averments, substantially meeting these objections, and curing the alleged defects, and setting forth as well the very important and necessary fact, until then omitted, that the federal government had been unable to agree with the owners of the lands for the purchase thereof. These amendments relieve the cause at bar of much embarrassment, and take out of the discussion objections which were pressed upon the court at the hearing with great vigor and ability. They are referred to now only to call attention to the deficiencies in the petition as originally framed, and to guard against the adoption of it as a precedent.

The other objection relied upon is, the petition fails to show that any provision has been made by act of congress, in terms, for the just compensation of the owners of the property sought to be appropriated and taken. I am doubtful whether this objection, stated as it is, should be held valid. There is a series of cases which seem to hold otherwise. The conclusion at which the courts in those cases arrived appears to be founded upon this argument: The proceedings were instituted by the sovereign government by virtue of the right of eminent domain, inherently possessed; not by an individual or a private corporation to whom the right of eminent domain had been delegated by the sovereign. Eminent domain is the supreme dominion the sovereign power has in and over all property within its jurisdiction, coupled with the absolute right to appropriate such property, against the consent of the owner, for the promotion of the general welfare, or as public necessity may require. It pertains as a necessary, constant, and inexhaustible attribute to sovereignty, and therefore does not depend upon constitutional recognition or legislative enactment. And so it has been determined that the clause in the federal constitution providing that private property shall not be taken for public use without just compensation is no part of the right itself, but only a limitation upon the exercise of the right. In other words, the right or power of eminent domain is as supreme now, in its initial operation, as it was before the amendment to the constitution, providing for just compensation was adopted. The amendment simply mitigates the harshness and severity of the final operation upon the interests of the property owner by endowing him with an indefeasible right to just compensation for his property taken and appropriated against his consent. Now, it will be noticed that this clause of the federal constitution differs from similar clauses in state constitutions in this: that it does not require just compensation to be made before the taking of the property. It simply provides for just compensation. The time of the making of the compensation is not fixed or determined. That it need

not be made, necessarily, before the taking, in cases where the sovereign power itself is the taker, has been repeatedly held by the courts. These adjudications go upon the ground that when the sovereign power—that is, the federal government, the state, or the municipality as agent of the state—has provided a remedy by resort to which the property owner can have his compensation duly assessed, adequate means are afforded for its satisfaction, since the whole property of the sovereign or of the state or of the municipality is a fund to which he can resort without risk of loss. That is to say, the compensation which becomes inalienably the owner's at condemnation becomes at the same time, and is, a public charge. The good faith of the public is pledged for its payment, and all resources of taxation may be, by the owner, called into action in raising and obtaining the amount. Hence the mere fact that a special fund for the compensation of the owner whose property was to be taken and appropriated by the sovereign power was not designated or fixed in the act authorizing the taking and appropriation, would not necessarily invalidate the act itself. While these cases to which I have referred are undoubtedly well considered, and the conclusion seems apparently justified by the argument, it is not necessary to consider the present case as standing upon such narrow ground. An examination of the statute of March 3, 1891, discloses an objection to these proceedings which must be fatal. The act not only fails to provide compensation, but in terms actually forbids the making of any compensation to the land-owner by the United States for the lands to be taken. The words of the act of March 3, 1891, are as follows:

"For improving harbor at Philadelphia, Pennsylvania: Continuing improvement by the removal of Smith's island and Windmill island, Pennsylvania, and Petty's island, New Jersey, and adjacent shoals, three hundred thousand dollars: * * * provided, further, that the title to any additional lands acquired for this purpose shall be vested in the United States without charge to the latter."

In other words, this act, if it, as it has been argued, authorized condemnation proceedings to be taken for the purpose of acquiring the land needed for the improvements mentioned, would have to be read this way: That the secretary of war is authorized, for the purpose of continuing the improvement of the Delaware river at or near Philadelphia, and within the limits of the state of New Jersey, to expend the sum of three hundred thousand dollars; that for the purpose of acquiring possession of the lands necessary therefor he may, if, in his opinion, such lands are necessary and advantageous to the United States, institute proceedings to condemn such lands in a court having jurisdiction thereof, but with the express stipulation that under no circumstances whatever shall the United States make any compensation to the land-owner for the property so taken by them.

The distinction between such legislation and the legislation which fails in itself to provide the compensation for the benefit of the land-owner is readily seen. The omission in the one case to provide the compensation where the sovereign power is the condemning party, does not deprive the

land-owner of any right whatever. As Judge Cooley says in his treatise on Constitutional Limitations, the public faith is pledged to compensate him; all public property is subject to his claim, and his property cannot be taken without such compensation being awarded to him. But in the act now under consideration there is not only an omission to provide for compensation, but actual, positive, and direct legislative interdiction of the making of any compensation to the land-owner at all. In other words, the secretary of war is authorized by it, if these proceedings are to be justified, to deprive the land-owner of his property, and at the same time to notify the land-owner that under no circumstance will he be compensated therefor. Such an act would be clearly within the interdiction of the constitution. It is perfectly apparent from the reading of this act that the legislative power of the United States never intended that condemnation proceedings should be begun and proceeded with to obtain possession of this property. By the true construction of the act in question it contemplates the acquisition of the land necessary for the improvements in question, not against the will of the owners, and by condemnation, but by the voluntary conveyance from the owners, or from some one who may purchase the same from the owners, and who would thereupon transfer the title to the United States; and in that case the United States agreed to expend the sum of $300,000 in the excavations and the removal of obstructions to navigation which the proposed improvements contemplate. In fact, the only circumstance under which the secretary of war is authorized to make the improvement and expend the appropriation is the free gift of the lands to the United States. My reading of the acts in question compels me to the conclusion that congress never intended to authorize the acquisition of these lands by the exercise of eminent domain. Their possession by the federal government was to depend upon voluntary conveyance alone. It follows that the petition must be dismissed.