UNITED STATES v. A CERTAIN TRACT OF LAND IN CUMBERLAND TP.

(Circuit Court, E. D. Pennsylvania. June 19, 1894.)

EMINENT DOMAIN — AUTHORITY OF GOVERNMENT OFFICER TO PROCURE REAL ESTATE—ACT MARCH 3. 1893.

The act of congress approved March 3, 1893, providing for the proper preservation of the lines of battle at Gettysburg, Pa., and appropriating money for the purpose, does not authorize the procurement of real estate, ·such as to justify condemnation proceedings under the act of congress of August 1, 1888.

The petition of the United States set out the act of congress approved August 1, 1888 (Supp. Rev. St. U. S. p. 601), the act of the legislature of Pennsylvania approved June 8, 1874 (Purd. Dig. p. 501, pl. 2), the act of congress of March 3, 1893, the sundry civil appropriation bill for fiscal year ending June 30, 1894, providing, inter alia, as follows:

"Monuments and Tablets at Gettysburg. For the purpose of preserving the lines of battle at Gettysburg, Pennsylvania, and for properly marking with tablets the positions occupied by the various commands of the armies of

the Potomac and of northern Virginia on that field, and for opening and improving avenues along the positions occupied by troops upon those lines, and for fencing the same, and for determining the leading tactical positions of batteries, regiments, brigades, divisions, corps and other organizations, with reference to the study and correct understanding of the battle, and to mark the same with suitable tablets, each bearing a brief historical legend, compiled without praise and without censure, the sum of twenty-five thousand dollars, to be expended under the direction of the secretary of war."

It stated that, to carry out the purposes of the said act, it was necessary for the United States to acquire a certain strip of land in Adams county, particularly described, which included many tactical positions occupied by different bodies of troops engaged in the battle of Gettysburg; that the secretary of war had, in accordance with the act of 1888, applied to the attorney general to institute condemnation proceedings against the said land, and the attorney general had instructed the United States attorney to commence the same; and that the Gettysburg Electric Railway Company claimed to own the land in question. The petition prayed for the appointment of a jury to estimate and determine the value of the said land, and report to the court.

The Gettysburg Electric Railway Company filed an answer, setting up its incorporation by articles of association filed July 28, 1891, under the general street-railway act of May 14, 1889, and stating the width of its railway and certain branches to which the proper local authorities had consented; that it had acquired the land in question to be condemned by deeds in 1891–92, being a narrow strip, 6,000 feet long and 30 feet wide, as a part of the width and right of way of one of said branches; that the same was an integral part of its railway and franchise, and that it was in full use and operation; that the said company did not possess the right of eminent domain; and that the effect of the proposed condemnation would be to cut its line in two, destroy its continuity, and prevent its further operation.

The said electric railway thereupon moved to quash the said petition for the following reasons, appearing upon the face of the petition and answer:

(1) It does not appear in the said petition that any act of congress has expressly or impliedly authorized the secretary of war to procure any real estate upon the field of Gettysburg. The act of March 3, 1893, contains no such authority.

(2) The purposes specified in the act of March 3, 1893, are not public uses.

(3) Neither the act of August 1, 1888, nor that of March 3, 1893, was intended to authorize the secretary of war to procure real estate by condemnation already devoted to a public use.

(4) No appropriation for the procurement of real estate has been made by congress. The property of the respondent cannot be taken without an adequate provision being made by which compensation can be certainly obtained.

Charles Heebner, Thomas Hart, Jr., and David Wills, for the motion.

Ellery P. Ingham and Robert Ralston, U. S. Attys., opposed.

DALLAS, Circuit Judge (after stating the facts). The United States, by Ellery P. Ingham, Esq., its attorney, has filed a petition

for the appointment of a jury to estimate and determine the value of certain property in the petition described, which belongs to the Gettysburg Electric Railway Company.   This property, the petition states, is proposed to be taken by condemnation by judicial process of the United States, by the secretary of war acting on its behalf, in pursuance of authority derived, as is averred, from two acts of congress, which are referred to in the petition as follows:

"(1) That by an act of congress approved August 1, 1888, entitled 'An act to authorize condemnation of land for sites of public buildings and for other purposes,' it is provided 'that in every case in which the secretary of the treasury, or any other officer of the government, has been, or hereafter shall be, authorized to procure real estate for the erection of a public building or for other public uses he shall be, and hereby is, authorized to acquire the same for the United States by condemnation, under judicial process, whenever in his opinion it is necessary or advantageous to the government to do so, and the United States circuit or district courts of the district wherein such real estate is located shall have jurisdiction of proceedings for such condemnation, and it shall be the duty of the attorney general of the United States, upon every application of the secretary of the treasury, under this act, or such other officer, to cause proceedings to be commenced for condemnation within thirty days from the receipt of the application at the department of justice.'

"(2) That by an act of congress of the United States of America approved on the 3d day of March, A. D. 1893, entitled 'An act making appropriations for sundry civil expenses of the government for the fiscal year, ending June 30, 1894, and for other purposes,' it is provided, inter alia, as follows: 'Monuments and Tablets at Gettysburg.   For the purpose of preserving the lines of battle at Gettysburg, Pennsylvania, and for properly marking with tablets the positions occupied by the various commands of the armies of the Potomac and of northern Virginia on that field, and for opening and improving avenues along the positions occupied by troops upon those lines, and for fencing the same, and for determining the leading tactical positions of batteries, regiments, brigades, divisions, corps and other organizations with reference to the study and correct understanding of the battle, and to mark the same with suitable tablets, each bearing a brief historical legend, compiled without praise and without censure, the sum of twenty-five thousand dollars to be expended under the direction of the secretary of war.' "

The Gettysburg Electric Railway Company moves to quash the petition, and upon that motion, among other things, denies that the secretary of war has been authorized to procure the land described; and as my conclusion upon the question thus presented is determinative of the controversy, the several additional reasons assigned in support of the motion will not be discussed.

The power of the government of the United States to take private property for public use, upon making just compensation, is unquestionable; and, for the present purpose, I assume, without deciding, that the use alleged to be contemplated in this instance is a public use, and that the taking proposed would be compensated.   The power referred to is, however, not exercisable at all in the absence of legislative authorization.   This, at least with respect to the case before the court, is not disputed, and, consequently, the only material inquiry is: Has congress, by the statutes relied on by the petitioner, authorized the secretary of war to acquire by condemnation the property to which the petition relates?   By the act of August 1, 1888, it is provided that, "in every case in which any officer of the government is authorized to procure real estate," he may ac-

quire the same by condemnation. The authority to condemn is thus made dependent upon the existence of authority to procure, and the assertion of this latter authority is based, in the present case, solely upon the act of March 3, 1893, which is an act "making appropriations for sundry civil expenses of the government," and appropriating, inter alia, $25,000 for certain distinctly specified objects, among which the procurement of real estate is not mentioned. There is certainly no expressed intent to acquire real estate, and therefore the authority claimed must, if it exists, rest wholly upon implication. The power of eminent domain is an inherent and essential attribute of sovereignty, but it is arbitrary in character, and is subversive of the right of private property wherever it is resorted to. Therefore, before it can be exercised by any officer of the government, its delegation to him must plainly appear, and may not be deduced from ambiguous language by doubtful inference. Apart, however, from this especial consideration, it would be impossible to accept the petitioner's construction of the statute which he sets up. It is an appropriation, act. Under the only head which is pertinent, it simply appropriates for certain distinctly designated purposes a sum of money, which may or may not be sufficient to meet the expenses involved in executing those purposes. But it not only does not contain any express provision or direction for the acquisition of land, it does not even make any appropriation which can, in reason and fairness, be supposed to have been intended for the procurement (in addition to the specified items) of the strip of ground, 30 feet wide and 6,000 feet long, to which this proceeding relates. The contention that, without taking this land, the purpose of the act cannot be accomplished, is one which should not be allowed to prevail. It is not necessary to assume the fact, or that it was supposed by congress to be, that the United States would find it requisite to acquire title to the soil; and, at all events, it is for congress, and not for the court, to determine what power the former should or must delegate to effect its purposes. To uphold the authority now claimed would, in my opinion, be to supplement, not to construe, a legislative enactment; and to sustain this petition would, I am convinced, be to sanction the taking of property without right.

By the victory of Gettysburg, the integrity of the constitution of the United States was preserved, and patriotism demands that the field of that great battle should be appropriately marked and embellished; but without doing violence to the constitution itself no court can usurp the legislative power, which that instrument vests exclusively in congress. nor without disregard of its principles can any person or number of persons be deprived of property without due process of law. The petition is quashed.

NOTE. Congress, by joint resolution approved June 5, 1894, authorized the purchase and condemnation of real estate by the secretary of war for the purpose of carrying out the provisions of the act of March 3, 1893. In 67 Fed. 869, it was held that the use indicated was not a public use, under the constitution.