UNITED STATES v. RAUERS.

(District Court, S. D. Georgia, E. D. November 14, 1895.)

1. EMINENT DOMAIN—LEGISLATIVE AUTHORITY.

Express legislative power is necessary to authorize the condemnation of private property for public use, and statutes claimed to confer such power must be strictly construed.

2. SAME—ACTS CONG. MARCH 2, 1889, AND MARCH 3, 1893.

Act Cong. March 2, 1889, authorizing the secretary of the treasury to establish a lighthouse on St. Catherine's Island, Ga., at a point to be selected by the lighthouse board; and Act Cong. March 3, 1893, appropriating $20,000 for the establishment of a lighthouse near the entrance to St. Catherine's Sound,—do not authorize proceedings for the condemnation of private property, since neither act gives express power to take such property.

Proceedings for condemnation of land for the establishment of a light station on Saint Catherine's Island, Ga.

William T. Gary, U. S. Atty.

W. W. Gordon, Jr., and Denmark, Adams & Freeman, for respondent.

SPEER, District Judge. This is a question of much interest. On the one hand, we have what are unquestionably the beneficent purposes of the government to establish a light station, to advance the interests of navigation. On the other hand, we have to consider the right of the private citizen to the dominion of his land, which is very valuable intrinsically, and particularly valuable to the owner because of the facts set up in the answer.

A fundamental principle of law controlling all matters of this character is that every statute which undertakes to appropriate in any manner the property of private persons for public use, must be strictly construed. One of the great aims of government is to secure to each citizen the enjoyment of his estate. On the other hand, in cases of public necessity, the right of the individual must yield to the right and demand of the public; but, since that demand is in derogation of private right, it must be closely scrutinized, and the expression of legislative purpose in which it is conveyed, must be strictly construed.

"So high a prerogative as that of divesting one's estate against his will should only be exercised where the plain letter of the law permits it, and under a careful observance of the formalities prescribed for the owner's protection." Cooley, Const. Lim. p. 651.

The same eminent authority also declares:

"Express legislative power, moreover, is needed for these purposes. It will not follow that, because such things are convenient to the accomplish-

ment of the general object, the public may appropriate them without express authority of law; but the power to appropriate must be expressly conferred." Id. p. 666.

It is elsewhere stated that:

"The act authorizing condemnation must be express and clear. If there are doubts as to the extent of the power, after all reasonable intendments in its favor, the doubts should be resolved by a decision adverse to the claim of power." Mills, Em. Dom. § 48.

The supreme court of Massachusetts sustains this proposition:

"It must appear that the government intended to exercise this high sovereign right by clear and express terms, or by necessary implication, leaving no doubt or uncertainty respecting such intent. It must also appear by the act that they recognized the right of private property, and mean to respect it; and, under our constitution, the act conveying the power must be accompanied by just and constitutional provisions, for full compensation to be made to the owner." Boston, etc., R. Corp. v. Salem, etc., R. Co., 2 Gray, 36.

In applying this rule of construction to the legislation enacted by congress with regard to the particular matter under consideration, we find, first, that by the act of March 2, 1889, the congress of the United States has authorized and directed the secretary of the treasury to establish a lighthouse station on Saint Catherine's Island, state of Georgia, at a point which the lighthouse board may select as the most eligible, at a cost not to exceed $20,000. We find thereafter, in the act of 1893, that congress has appropriated "for the establishment of a light station near the entrance to Saint Catherine's Sound, Ga., $20,000." Now, it is not to be understood that congress intended to establish two light stations there; and yet, if full effect is given to the terms of both of these acts, it could do so, for, under the proof, a light station might be established near the entrance to Saint Catherine's Sound, and not established on Saint Catherine's Island at all. It might be on Ossabaw Island. The two enactments relate to the same subject-matter,—that is, the same light station and the same appropriation; but neither provides for anything more than for authority and direction to the secretary of the treasury to establish the light station. He may do so, in the opinion of the court, either on Saint Catherine's Island or on Ossabaw Island, or at some shoal, outside low-water mark; and it is nowhere expressly provided in either act that he may procure or acquire real estate. Nor does this appear by necessary implication. The light station itself may, under the terms of this act, cost $20,000. There is no provision made for the compensation of a landowner whose land may be desired by the government; and yet we are trying a proceeding to condemn the land of the defendant, Mr. Rauers. Are proceedings, then, for condemnation for the purposes of the public use, contemplated by these acts of congress? What is the statute upon that subject? It is this:

"That in every case in which the secretary of the treasury or any other officer of the government has been, or hereafter shall be, authorized to procure real estate for the erection of a public building or for other public uses, he shall be, and hereby is, authorized to acquire the same for the United States by condemnation under judicial process, whenever, in his opinion, it is necessary or advantageous to the government to do so." Act Aug. 1, 1888; 1 Supp. Rev. St. p. 601.

The secretary of the treasury is not, by the terms of the statutes I have read, authorized to procure real estate; and, as I have said, he must be expressly so authorized before he is authorized to proceed by condemnation in his discretion. Congress has repeatedly recognized this distinction. It does so in the act of March 3, 1883, which provides:

"And the secretary of the treasury is authorized to acquire, by private purchase or by condemnation, the necessary lands for public buildings and light houses to be constructed, and for which money is appropriated [that is, for which money is already appropriated], including all public building sites authorized to be acquired under any of the acts of the first session of the Forty-Second congress."

In that instance the public buildings had been authorized; the secretary of the treasury had been authorized to construct public buildings just as here he has been authorized to establish a light station. There the secretary of the treasury had been authorized to establish light stations precisely as he is here; and yet congress deemed it essential to proceed further, and authorized him to procure, either by private purchase or by condemnation, the necessary lands. A multitude of statutes enacted by congress clearly illustrate the method in which the secretary of the treasury is authorized to procure or acquire lands for public uses. Take, for instance, the act to establish a public building at Bay City, Mich. (25 Stat. 194), which reads that "the secretary of the treasury be, and he is hereby, authorized and directed to purchase, or provide by purchase, condemnation proceedings or otherwise, a site," etc.; and again, page 86 of the same volume, where he is authorized and directed to purchase or acquire by condemnation, or otherwise provide, a site for a public building at Birmingham, Ala.; and the same volume, p. 174, where he is authorized and directed to purchase or acquire by condemnation, or otherwise provide, a site for a public building at Tallahassee, Fla. These instances are like a large number of statutes, wherein similar authority is given. In each case there was express authority to the secretary of the treasury to procure real estate for public uses. This is very different language from that before the court, in which he is merely authorized to establish a structure for public use at a spot to be selected by the lighthouse board.

But we need not, exclusively, reason by analogy from congressional legislation. Questions in all respects similar in principle have been decided by the courts. It was held by the district court of the United States for the district of New Jersey, under the very act of August 1, 1888, on which the government relies, that the petition for condemnation must affirmatively show that the officer is authorized by congress to acquire lands, and that, in his opinion, it is necessary or advantageous to proceed by judicial process, and these facts cannot be inferred. The court uses this language:

"It is a well-settled principle that, when the exercise of special authority delegated by statute to a particular person or to a special tribunal is dependent upon conditions precedent, all preliminaries which show the fulfillment of such conditions, and which confer upon such person or tribunal the power

to act, must clearly appear upon the face of the proceedings." **In re Montgomery,** 48 Fed. 899.

Since, as we have seen, the secretary of the treasury was not expressly authorized to procure real estate, this fact could not be, and is not, averred.

See, also, U. S. v. A Certain Tract of Land, 67 Fed. 869.

The question was quite as distinctly decided in the well-known case relative to the battlefield of Gettysburg. There the act of congress had made an appropriation for the purpose of preserving the lines at Gettysburg, and properly marking with tablets the position occupied by the various commands of the armies of the Potomac and of Northern Virginia on that field, and for opening and making avenues, and for determining the leading tactical positions of the battles, regiments, brigades, etc., the sum of $25,000 to be expended, under the direction of the secretary of war; but, no express authority having been granted to the secretary of war to procure the land for the purpose, it was held that "the power of the United States government to take private property for public use upon making just compensation cannot be exercised in the absence of legislative authority." U. S. v. A Certain Tract of Land (Cir. Ct. E. D. Pa.) 70 Fed. 940. That case was far stronger for the government than this, because provision had been made to compensate the landowners, with a view to the establishment of monuments, avenues, etc., for the public use. Here the legislation merely provides for the establishment of the light station, and makes no provision whatever for suitable compensation to the landowners.

After the decision last cited was rendered, congress passed a resolution to cure the defect. In the preamble of this act it was recited:

"And whereas, it has been recently decided by the United States court, sitting in Pennsylvania, that authority has not yet been distinctly given for the acquisition of such lands as may be necessary to enable the war department to execute the purposes declared in the act aforesaid." 28 Stat. 584.

This constitutes a legislative recognition of the validity of the judicial holding, if, indeed, that was necessary.

It is rarely the case where eminent text writers, the courts, and the legislature itself coincide so strongly in the recognition of a legal principle, that principle being that there must be express authority in the secretary of the treasury, when charged with such matters, to procure land for public use, before he is authorized, in his discretion, to proceed by condemnation for that purpose. There being no such authority here, the condemnation proceedings were not, in the opinion of the court, properly instituted, and we are therefore obliged to hold that the government has no authority to proceed to appropriate the land of Mr. Rauers, he being unwilling to part with his land. It was and is wholly competent for congress to give to the secretary of the treasury the necessary authority, but it has not done so. For this reason, and for other reasons not necessary to enumerate, but which sufficiently appear in the record of the cause, the court is compelled to deny the application.