LELAND STANFORD, GOVERNOR, JOHN F. CHELLIS, LIEUTENANT-GOVERNOR, AND WILLIAM H. WEEKS, SECRETARY OF STATE, AND *ex officio* MEMBERS OF THE BOARD OF STATE PRISON DIRECTORS OF THE STATE OF CALIFORNIA *v.* GEORGE A. WORN, *et al.*

PROCEEDINGS TO CONDEMN LAND.—In order to render proceedings for the condemnation of land for the use of the State effectual for any purpose, the provisions of the statute by which they are authorized must be strictly followed.

PLAINTIFF IN PROCEEDINGS TO CONDEMN LAND.—If the Act authorizing proceedings for the condemnation of land directs them to be commenced in the name of the People of the State, and they are commenced in the name of the Governor, Lieutenant-Governor, and Secretary of State, this renders the whole proceeding a nullity.

TIME OF PUBLICATION OF NOTICE.—If the Act authorizing proceedings for the condemnation of land directs a notice to claimants to be published for four weeks, and only twenty-four days elapse from the day of the first publication to the day the defendants are notified to appear, the Court acquires no jurisdiction over parties who do not voluntarily appear in the action.

CONTROL OF COURT OVER PROCEEDINGS TO CONDEMN LAND.—The Court does not lose its control over proceedings for the condemnation of land by reason of its adjournments at any time, but it continues as unfinished business until the deed is made and money paid over under the order of the Court.

WHEN PROCEEDINGS CONDEMNING LAND ARE VOID.—If, after proceedings have been taken to condemn land for the use of the State, the damages have been assessed, and a decree of condemnation entered, it shall appear that the State has acquired no title by the decree, the Court should, on motion of the Attorney-General, quash all the proceedings, and order the money to be refunded to the State.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*J. G. McCullough, Attorney-General,* for Appellant.

The motion of the Attorney-General to quash said proceedings, and to permit the State to withdraw the moneys from the custody of the Court, should have been granted.

First—The proceedings were irregular and void, and the State wished to dismiss them. It removed a cloud from claimants' title. (*Bensley* v. *The Mount. L. W. Co.*, 13 Cal. 314.)

Second—The moneys belonged to the State. They were

taken from her Treasury. No other had a vested right to the money until she had a vested right to the land. Getting no title to the latter, she had not lost title to the former. It is not the case of abandoning lands after they have been *legally* condemned, and thus making the former owner buy back the land or the easement. (*Hawkins* v. *The Trustees of Rochester*, 1 Wend. 53 ; *People* v. *Supervisors of Westchester*, 4 Barb. S. C. 64, 76 ; *Smart* v. *Portsmouth & C. R. R.*, 20 N. H. 233, 239 ; *Hampton* v. *Com'th*, 7 Harris, 19 Pa. 329, 334.)

*Patterson, Wallace & Stow*, for Respondents.

By the Court, SANDERSON, C. J.

This is an ‚action to condemn certain lands at Point San Quentin for State Prison purposes, under the provisions of an Act of the Legislature passed for that purpose, as amended in 1863. (Statutes of 1863, p. 224.) That Act authorizes the Attorney-General " in the name of the People of the State of California," to bring an action in one of the District Courts of any county adjoining the County of Marin, for the condemnation of all such lands as the State Prison Directors may deem necessary for the convenience of the Prison and the use of the State, and prescribes the mode and manner in which the action shall be prosecuted. It directs that the action shall be brought by filing a petition or declaration and publishing the same at least once a week for four weeks in some newspaper in the county where the suit is brought, and prescribes what matters shall be set forth therein, including a notice requiring all persons interested in the lands to come into Court, on a day to be specified in said notice, and file their objections in writing, if any they have, against the proposed condemnation. At the time specified in the notice, or as soon thereafter as is convenient, the Court is required to impanel a jury to assess the value of the lands. The Board of State Examiners are directed to audit the amount so assessed, together with such expenses as the Attorney-General may certify, and the

Controller is directed to draw his warrant for such amount in favor of the Attorney-General, payable on the 15th of December, 1863, who is required to pay the same into Court for the benefit of all the parties interested in the proceedings. Upon the payment of the warrant or the money into Court the clerk is required to execute a deed of the land in question to the State of California in due form of law, reciting the proceedings in the case, and thereupon it is declared that the State shall thereafter be the owner in fee simple absolute of said lands.

Under this Act these proceedings were instituted on the 1st day of May, 1863, and thereafter the value of the lands was assessed and the money paid into Court pursuant to an order of the Court made on the 29th of February, 1864. This order reserved to the parties the right to take any further steps they might deem proper until the 12th of March following, on which day the Attorney-General moved the Court to refund the money to the State, and to quash all the proceedings upon the ground that they were null and void by reason of a non-compliance with the provisions of the Act under which they had been instituted. This motion was denied, and thereupon the Attorney-General took an appeal to this Court from all the judgments and orders in the case.

It appears from the record that the petition was filed in the names of Leland Stanford, Governor; John F. Chellis, Lieutenant-Governor; William H. Weeks, Secretary of State, and *ex officio* members of the Board of State Prison Directors of the State of California, instead of the People of the State of California, as directed by the Act in question. It further appears that the notice required by the Act was not published for four weeks, as therein directed prior to the day upon which the owners were required to appear in Court and answer the petition, but for twenty-four days only. There are other grounds upon which it is claimed that these proceedings are null and void, which we omit for the reason that the two already stated are sufficient to establish their invalidity.

In order to render proceedings of this character effectual for

any purpose the provisions of the statute by which they are authorized must be strictly followed. The power must be exercised precisely as directed, and there can be no departure from the mode prescribed without vitiating the entire proceedings. (Sedgwick on Statutes, 319.) In *Bensley* v. *Mountain Lake Water Company*, 13 Cal. 306, the Court said: "All statutory modes of divesting titles are strictly construed, and to be strictly followed. He who relies for a title upon an extraordinary mode of acquisition given him, not by the will of the owner, express or implied, but against his will and by the mandate of the law, must show for his warrant a strict compliance with those statutory rules from which his title accrues." (See *Curran* v. *Shattuck*, 24 Cal. 427.)

The institution of this action in the names of the Board of State Prison Directors is wholly unauthorized by the Act in question.; on the contrary, the Act directs it to be brought in the name of the People of the State of California. This alone is sufficient to render the whole proceeding a nullity. But had the action been commenced in the name of the proper party, the Court failed to acquire any jurisdiction over the owners of the land (except such as voluntarily appeared), for the want of a sufficient publication of the notice required by the Act in question. A publication for four weeks is required, yet the notice in this case directed the owners to appear on the 2d of June, and its first publication was on the 9th of May, less than four weeks before the day appointed for their appearance in Court.

The District Court did not lose its power or control over the case by reason of its adjournments at any time. It was unfinished business, and necessarily continued in Court until the deed was made and the money paid over under the order of the Court. It being apparent that the State would have acquired no title to the land in question by virtue of the proceedings in this case, it was the duty of the Attorney-General to quash the whole case before the money was paid out by the Court, and his motion to that end ought to have been sustained.

The proceedings being void, the State acquired no right to a deed, nor did the owners of the land acquire any right to the money. The order denying the motion is reversed, and upon the return of the case to the .Court below, that Court is directed to enter an order quashing the entire proceedings, and directing the money now in Court to be refunded to the State.