[Sac. No. 1202.    In Bank.—November 13, 1905.]

DANIEL McCARTY, Respondent, v. SOUTHERN PAC-
IFIC COMPANY et al., Defendants.    CITY OF SAC-
RAMENTO, Intervener, Appellant.

Eminent Domain—Condemnation of Land for Levee—Easement of
City—Rights of Owner of Fee.—Where property is condemned
for public use, and an easement is sufficient for purpose of the
use, the fee will not be deemed to be appropriated, unless so stated
expressly, or by necessary implication, in the statute or judgment
of condemnation. The fee is not necessary for the purpose of con-

structing, maintaining, and repairing a city levee to keep out flood-waters, and the city has a mere easement therein. The owner of the fee has a proprietary interest above and below the levee and may use the same as he sees fit, provided such use does not impair the construction constituting the easement nor interfere with the use of the easement.

ID.—LEVEES CONSTRUCTED UNDER SWAMP-LAND ACT.—Under the statutes of May 13, 1861, and April 9, 1862, authorizing the board of swamp-land commissioners to construct levees for reclamation purposes, and to enter and take possession of lands for that purpose, upon appraise-ment of damages therefor, and providing for the turning over to the city levee commissioners of such portion thereof as is to be controlled by the city of Sacramento, and that thereupon "the title to said levees and appurtenances shall vest absolutely in the city," only the easement in the constructed levee, and not the fee, was appropriated by the commissioners and passed to the city.

ID.—POWER OF LEVEE COMMISSIONERS—LANDS OUTSIDE OF CITY.—The levee commissioners have no power to condemn land for levee pur-poses outside of the city for the purpose of constructing a levee thereon.

ID.—JUDGMENT OF CONDEMNATION.—Where the petition for condemnation of lands for levee purposes does not ask for a fee, and there is nothing in the report of the appraisers to indicate that the fee was to be taken for levee purposes, and the judgment confirms the report, without stating the nature of the estate taken, the judgment of condemnation only passes an easement, and not a fee simple to the land.

ID.—RIGHTS OF CITY UNDER EASEMENT—STRUCTURES.—The easement of the city gives it a right to erect and maintain on the levee all buildings or other constructions that may be reasonably necessary or convenient for the use to which it is devoted, or which are adopt-ed to preserve it in good condition for that use. This right merely adds to the burden of the easement. Whether or not the mainte-nance and operation of a railroad upon the levee is an undue inter-ference with the rights of the owner of the fee, or constitutes a substantial addition to the burden on his title, is a question not arising upon this appeal.

ID.—CONDEMNATION PROCEEDING—SUFFICIENCY OF NOTICE.—Though the law providing for condemnation of land for levee purposes does not specifically require notice, but directs the appraisers appointed *ex parte* to proceed to the land and hear and determine as to the damages awarded, and the order of court appointing them directed them to give notice of the time of the examination and hearing, which was done to the satisfaction of the court, the notice given appears to be a sufficient compliance with the rule requiring due process of law.

ID.—AUTHORITY OF CITY TO ACT FOR STATE BOARD—VOID CONDEMNATION BY CITY.—Where by the terms of the statute the state board of

swamp-land commissioners alone had authority to condemn lands for the construction of levees outside of the city, the fact that where the state board was out of funds the city was authorized to come to the aid of the state board, and construct so much of the levee as may be necessary, the moneys to be repaid to the city levee fund out of the first moneys coming into the treasury of the swamp-land district, does not dispense with the necessity of a petition of the state board to condemn lands for the construction of the outside levee; and a condemnation therefor by the city in its own name is without authority of law and void.

Id.—Proceeding for Condemnation Special and Statutory—Petition-ing Party—Jurisdiction.—The proceeding for condemnation is special and statutory, and the prescribed method in such cases must be strictly pursued. Where a petition must be presented by one party, a petition filed and presented by some other party would not give the court jurisdiction to proceed.

.Id.—Width and Character of City Easement—Estoppel—Support of Finding.—*Held,* that the evidence shows no estoppel of the plaintiff to claim that the width and character of the city's easement for the levee is otherwise than as found by the court, and that the finding of the court on that subject is supported by sufficient evidence.

APPEAL from a judgment of the Superior Court of Sacramento County. F. B. Ogden, Judge presiding.

The facts are stated in the opinion of the court. Further facts are stated in the opinion of the court in 144 Cal. 677, [78 Pac. 260].

J. H. McCune, for Plaintiff, Respondent.

Devlin & Devlin, for the Southern Pacific Company, and Central Pacific Company, Defendants, Respondents.

A. L. Shinn, for other Defendants, Respondents.

SHAW, J.—We adhere to the views expressed in the opinion rendered on the former hearing. The purpose of the present hearing was by the order therefor limited to the consideration of the "validity of the condemnation proceedings and the right of the intervener to an easement, under said proceedings, of greater width and extent than that given in the judgment appealed from." The former opinion assumed, without deciding, that the condemnation proceedings

were valid, and declared that the estate thereby acquired by the city of Sacramento was an easement and not a fee. It is claimed, however, that by the proceedings in condemnation the city was given an easement one hundred and sixty-five feet in width for all levee purposes, with the additional right to cause the levee, when completed, to be turnpiked and used as a toll-road, whereas by the judgment appealed from the easement given is only one hundred and forty feet wide, and is further limited so as to give the right to maintain the levee at the existing width only, which is much less than one hundred and forty feet, with no right to a turnpike road, and, as to the remaining width, giving only the right to take earth therefrom to repair the existing levee; so that if the proceedings in condemnation are valid, or if plaintiff is estopped to dispute their validity, the judgment appealed from is erroneous, and a new trial will be necessary.

Respondent now claims that there is no specification of the insufficiency of the evidence to sustain the finding as to the width, extent, and character of the easement. This contention is correct so far as the right to use the levee as a turnpike road is concerned. We think the question of the width of the strip of land in controversy, aside from the character of the estate therein, is sufficiently, though not clearly, presented by the specifications.

The law authorizing the proceedings made no provision for notice to the owners of the property condemned, and the record made of the proceeding is somewhat uncertain in respect to the description of the land taken and also as to the amount of damages awarded, and for these and other reasons the respondent claims that the proceedings are invalid. The law (Stats. 1861, p. 358, c. 352, sec. 16) does not specifically require notice, but it directs that the appraisers, who are appointed by the court *ex parte*, shall proceed to the premises, and examine, hear, and determine as to the damages awarded. The order of the court appointing these appraisers directed them to give notice of the time of the examination and hearing, and this was done to the satisfaction of the court. The constitutionality of such a proceeding seems questionable, but under the doctrine of the decision of the supreme court of the United States in *Paulsen v. Portland,* 149 U. S. 30, [13 Sup. Ct. 750], the notice given appears to be a sufficient

compliance with the rule that no person can be deprived of his property except by judgment upon due process of law. (See, also, *Curran* v. *Shattuck,* 24 Cal. 433.)

We do not consider it necessary to decide whether or not the proceeding is void because of uncertainty in the description or in the amount awarded as disclosed in the record. We think it was void for other reasons. As stated in the former opinion, section 6 of the act of 1862 (Stats. 1862, p. 152, c. 158) does not authorize the board of city levee commissioners to condemn lands outside the city to be used as a levee. It gives the board power to take land outside the city only for the purpose of obtaining therefrom materials for the construction of the levees within the city. (See *Johnston* v. *Sacramento County,* 137 Cal. 204, [69 Pac. 962].) The land in question was not taken for any such purpose, and if it were so taken it would not authorize the building or maintenance of a levee thereon. The levee in question was constructed by the city levee commissioners solely under the authority conferred by sections 4, 7, and 17 of the act of 1862 (Stats. 1862, pp. 152, 153, 158, c. 158) aforesaid. These sections provided that after the board of state swamp and overflowed land commissioners had finally adopted a plan for the reclamation of swamp-land district No. 2, in which the lands and levee in question are situated, or after such plans had been finally approved at a joint meeting of the state board and city board therein provided for, the city board should proceed to construct that portion of the levees required by such plans, lying within the city, and that as soon as possible the state board should let out contracts for the construction of all the levees outside of the city. Section 17 provided, however, that in case the state board was unable from lack of funds to "let out the constructing the levees" for said swamp-land district in time to have them completed by October 1, 1862, the city levee commissioners could construct so much of said levee as was necessary for the protection of the city, or could advance the funds necessary therefor to the state board, and that the moneys so expended or advanced should be repaid to the city levee fund out of the first moneys thereafter coming into the treasury of the swamp-land district. The plans for the levees outside the city were adopted by the state board, and modified and finally estab-

lished at a joint session of the two boards, as provided in the act. The state board was without funds to complete its portion thereof, and let no contracts therefor, but gave notice of its inability to do so to the city board, and requested the latter to act in the premises in accordance with the above provisions of the act. Thereupon the proceedings in condemnation were taken, and the levee was thereafter constructed by the city board. It will be observed that by the scheme provided the levee in question was to be made by the state swamp-land board, and that the city board was empowered to come to the assistance of the state board, and construct the levee in its behalf; but that the authority of the city board to condemn lands for a levee was restricted to lands necessary for levees within the city, and did not include land for this levee, which lay outside of, and to the east of, the city and eastwardly of Burns Slough. The authority to condemn lands for this levee was given to the state board by section 16 of the act of 1861. (Stats. 1861, p. 358, c. 352.) An authority to one party to "construct" a levee on behalf of a second party could scarcely be held in any case to include authority to the first party to condemn the land on which the levee was to be constructed. (10 Am. & Eng. Ency. of Law, 1074.) But it clearly cannot be so construed in a case like the present one, where the law by implication withholds such authority to condemn from the first party, and by its terms expressly gives it to the second party. The grant of such power must be by express terms or necessary implication, and the statute conferring it must be strictly construed. (7 Ency. of Plead. & Prac., 468; *San Francisco etc. W. Co.* v. *Alameda W. Co.,* 36 Cal. 639; *Curran* v. *Shattuck,* 24 Cal. 432; *Stanford* v. *Worn,* 27 Cal. 174; *Creighton* v. *Manson,* 27 Cal. 628; *Smith* v. *Davis,* 30 Cal. 537; *Trumpler* v. *Bemerly,* 39 Cal. 491; *Chase* v. *Putnam,* 117 Cal. 368, [49 Pac. 204].) The proceeding is special and statutory, and the prescribed method must, in such cases, be strictly pursued. A petition to the district court by the state board was required. There is no authority given for the filing of such a petition by any other party. Hence a petition filed and presented by some other party would not give the court jurisdiction to proceed. (*Stanford* v. *Worn,* 27 Cal. 171; 7 Ency. of Plead. & Prac., 513, 517.) In such special proceedings, where a petition is required, the presentation of a peti-

tion showing authority to proceed is necessary to confer jurisdiction upon the court. (*In re Grove St.*, 61 Cal. 452; *Haynes* v. *Meeks*, 20 Cal. 315; *Meeks* v. *Hahn*, 20 Cal. 626; *Fitch* v. *Miller*, 20 Cal. 382; *Pryor* v. *Downey*, 50 Cal. 398, [19 Am. Rep. 656]; 15 Ency. of Law & Pro. 810, 816; 12 Ency. Plead. & Prac., 178.) It follows that the court had no jurisdiction of the proceeding and that the judgment of condemnation was void.

The appellant further claims that the plaintiff's predecessors accepted a part of the award made, or the benefit thereof, and that the plaintiff is thereby estopped from asserting the invalidity of the proceeding or denying the right of the city to an easement of the width and character purported to be given thereby. The amount of the damages awarded was $195.50, and there is no evidence that any part of it was ever paid. The appraiser's report in the proceeding states that the entire tract belonging to the plaintiff's predecessors was subject to taxes of 1859, 1860, and 1861, amounting to $665.96. In July, 1863, the district attorney filed with the city board a claim for $741.39 for the same taxes, then delinquent, and the board thereupon "decided to withhold the same from the amount of damages awarded." The stubs of the warrant-book of the board further show that afterwards warrants were issued to the district attorney for this sum, with a memorandum that the amount was withheld from the damages awarded. There is nothing further to show the reason or purpose of making this payment, if it was made, nor any evidence that the owners consented to the arrangement or had any knowledge thereof, except an admission at the trial by plaintiff's counsel that the "balance" of the delinquent taxes for those years was paid by the owners. There is, however, no evidence that there was any balance. There are other facts inconsistent with an estoppel. The levee at that time covered but a small part of the one hundred and sixty-five-foot strip now claimed, and the excess, it appears, was not then claimed by the city board. In the spring of 1868 the levee was raised several feet and widened so as to be from fifty to seventy feet wide at the bottom. In the following November the city board paid to the then owners $247 for 9.88 acres of land taken for levee purposes on this levee. This would make a strip through the tract eighty-four feet

wide, or forty-two feet additional on each side of the former levee. The inference is thus raised that the owners claimed and the board paid the above sum for the additional land taken by the widening of the levee through that tract, which is inconsistent with the theory that the parties had accepted the award, waived the invalidity of the proceedings, or consented to an easement one hundred and sixty-five feet in width. In view of this conflict in the evidence, and other evidence which we do not consider it necessary to discuss, we cannot say that the finding of the trial court as to the width and character of the easement is not supported by sufficient evidence.

The judgment, so far as it affects the rights of the intervener, is affirmed.

Angellotti, J., McFarland, J., Van Dyke, J., Lorigan, J., and Henshaw, J., concurred.

The following is the opinion above referred to, rendered in Bank on the fifth day of April, 1905:—

SHAW, J.—Upon the former hearing of this case the appeals of the plaintiff from the order granting a new trial and of the defendants from the judgment were disposed of. That part of the former opinion based on the theory that the intervener's motion for a new trial was also granted, and refusing to consider its appeal from the judgment on that theory, was vacated before the decision became final. Although the intervener and defendants seemed to make common cause against the plaintiff, yet, upon an inspection of the motion and order for a new trial, it appears that it was the motion of the defendants alone which was granted, and that the judgment, so far as the intervener is concerned, stands subject to the present appeal. A general statement of the facts and points in controversy is contained in the opinion. (144 Cal. 677, [78 Pac. 260].) We are here concerned only with the points presented by the intervener upon its appeal.

In its complaint in intervention the city of Sacramento alleged that it was the owner in fee of the strip of land one hundred and sixty-five feet in width, constituting the levee in controversy, and upon this allegation issue was taken by the plaintiff. The court found and adjudged that the city

has an easement for its levee over and across the said strip of land, including the entire levee as now existing, with the privilege of entering on said land to repair the levee, and of taking earth for that purpose from said land at any point within seventy feet of the middle line of the levee, but not to interfere with the buildings of plaintiff or with his occupancy of the land, except so far as may be necessary for the protection and maintenance of the levee, and that the railroad track was maintained upon the levee for its protection. Counsel for intervener in their brief say that the easement as described in the findings was curtailed in the judgment. They do not, however, point out in what particular it was curtailed, and upon examination we fail to perceive wherein the description in the judgment is substantially different from that in the findings.

The only point argued by the intervener on its appeal from the judgment is that upon the evidence the court should have adjudged that the city was the owner of the fee in the strip of land embraced in the levee, instead of a mere easement therein for levee purposes. It is claimed, although, as we think, not seriously, that the evidence shows that the city has acquired title to the fee by adverse claim and possession. The evidence is of such a character, however, that we cannot disturb the finding on this proposition, but must hold that it is sufficiently supported on that point.

The principal contention that the city owns the fee is made upon the theory that the condemnation proceedings under the act of 1862 vested in the city the fee simple. There is another ground upon which the right to the fee appears to be based, although it does not seem to be clearly stated in the brief. It is that the board of swamp-land commissioners, in charge of the reclamation district in which the levee in controversy is situated, constructed the levee in question under the authority given in section 16 of the act of May 13, 1861, (Stats. 1861, p. 358, c. 352,) and that it became the property of the city in fee by virtue of the provisions of that section and of section 8 of the act of April 9, 1862, (Stats. 1862, p. 153, c. 158,) and that this title is independent of the effect of the condemnation proceedings. The objection that the act of 1862 gave no power to the city levee com-

missioners to condemn lands outside of the city limits, and that the proceedings in condemnation were void because of uncertainty in the description of the land taken, and by reason of want of notice to the owners, may be dismissed from our consideration. For the purposes of the case, we may assume that the proceedings were valid, and that the authority of the levee commissioners to institute the proceedings cannot now be questioned. Conceding all this, we think that the evidence, taken in connection with the law bearing upon the proceedings, shows that the city obtained nothing more than an easement for the construction, maintenance, and repair of the levee.

There can be no doubt that it was within the power of the state to provide by statute that the fee should be taken for that purpose. The rule is, however, and the appellant practically concedes it, that in all cases where property is taken for public use, and an easement is sufficient for the purpose of the use, the fee will not be deemed to be appropriated in any case, unless it is so stated expressly or by necessary implication, either in the statute or in the judgment of condemnation. The law does not favor the taking of a fee when it is not necessary to the use. The fee is not necessary for the purpose of constructing, maintaining, and repairing a levee intended to keep out flood waters. It is well known that such floods occur only at rare intervals, usually not more than once in a year, and lasting only for a few days, or a few weeks at most, and in some years not occurring at all. During all the intervening periods such a levee serves no public purpose whatever. Once it is constructed, its surface can be used by the owner of the fee during the greater part of each season for many purposes, and the grasses and vegetation grown thereon may be appropriated by him without in any respect affecting or impairing the use or efficiency of the premises as a levee. The two uses are not wholly inconsistent; hence, so far as they are consistent, they may exist together and be vested in different persons. The owner of the fee will still have a proprietary interest in all the space above and below the levee, and may use the same as he sees fit, provided such use does not impair the constructions constituting the easement nor interfere with the use of

the easement. It is clear, therefore, that the fee was not necessary to the use, although it may be conceded that the legislature might have so declared.

It may be granted that where the statute in terms provides for the condemnation of the "land" or of "lands" for the public uses and purposes, or where any equivalent term is used, it will usually be construed to authorize the taking of the fee. We search the statutes in vain for any language which expressly or by necessary implication gives authority to take the fee for the levee in question. Section 16 of the act of 1861 aforesaid, relating to the reclamation of swamp and overflowed land, provides that if in the work of reclamation it is found necessary to construct levees, trenches, or other works on lands other than swamp and overflowed lands, the board of swamp-land commissioners "shall have power to enter upon and take possession of so much of said land as may be necessary for said work of reclamation, if the same be private property, and, if the rights and privileges necessary be not granted by the owners," that appraisers may be appointed to assess the damages and injuries to such lands arising from the taking. This manifestly contemplates only such an entry and possession as may be necessary for the purpose intended; that is, to construct, maintain, and keep in repair the levee for the purposes of reclamation. It does not authorize the commissioners to take the land, but merely to enter upon and take possession thereof; and, if the right and privilege to do so are not given by the owners, then such right and privilege are to be taken, and payment made of the damages arising therefrom. Keeping in view the character of the public use for which the property was to be taken, it is manifest that this language should not be construed to direct the taking of the fee simple. Section 8 of the act of 1862 aforesaid, relating to the levee in question, provides that when the levee was finished by the swamp-land commissioners, and the portion thereafter to be controlled by the city of Sacramento ascertained, the commissioners should then deliver such portion to the city levee commissioners, and thereupon "the title to said levees and their appurtenances shall vest absolutely in the city of Sacramento." This does, indeed, declare that the title to

the thing described shall be absolute in the city; but the thing itself is not the land in fee simple on which the levee stands, but only the levee. This plainly implies that an easement, and not the fee, was intended to be given,—that is to say, the thing erected on the land and devoted to public use, with all the appurtenances necessary for its effectual use and maintenance.

Nor does the judgment in the condemnation proceedings carry a greater estate than a mere easement in the property. Section 6 (p. 152) of the act provides that the city levee commissioners may enter upon and take possession of any land that may be necessary for the levee within the city, or any land within the county, although outside the city, that may be necessary or proper to furnish materials for its construction, and may have the same condemned for the public use in accordance with section 16 of the act of 1861. This manifestly does not empower the levee commissioners to condemn lands outside of the city for the purpose of erecting a levee thereon, but gives the right to condemn lands outside of the city solely for the purpose of taking therefrom materials with which to construct the levee. The land in question is outside of the city of Sacramento. Conceding, however, that this question cannot now be entertained, it is clear that the language of the section does not give the city levee commissioners any power either to take or to condemn a fee-simple title to land within or without the city for the purposes of constructing a levee thereon. Moreover, the petition upon which the condemnation proceedings were founded does not ask for the taking of a fee. It alleges that the city levee commissioners "have found it necessary to enter upon and occupy and use for the purpose of constructing levees thereon" the lands therein described, and it prays that such orders may be made as will entitle the levee commissioners "to enter upon, take, use, and appropriate for levee purposes" the lands described. This use demands an easement, and nothing more. There is nothing in the report of the appraisers to indicate whether the appraisement is of an estate in fee or of a mere easement. It merely states the compensation proper to be made to the owners of the land condemned for levee purposes. The judgment con-

firms the report of the appraisers, without stating anything concerning the nature of the estate to be taken, or for which the damages are allowed. Under neither of the proceedings which appear to have been taken in this case can the city claim a fee-simple title.

The easement, however, gives the city a right to erect and maintain on the levee all buildings or other constructions that may be reasonably necessary or convenient for the use to which it is devoted, or which are adapted to preserve it in good condition for that use. The right to do these things, however, does not make it necessary to hold that the estate taken is a fee simple. This right merely adds to the burden of the easement. Whether or not the maintenance and operation of a railroad upon the levee is an undue interference with the rights of the owner of the fee, or constitutes a substantial addition to the burden on his title, is a question not arising on this appeal. The intervener does not complain of that part of the judgment which appears to recognize the right of the railroad to maintain its track upon the levee, but seems to acquiesce in that use of the levee, and makes common cause with the defendants against the plaintiff. As between the plaintiff and the defendants a new trial has been granted, and the right to maintain the railroad track as between those parties is not involved in this appeal.

The judgment is affirmed so far as it may affect the rights of the intervener and the plaintiff.

Van Dyke, J., Henshaw, J., Angellotti, J., and Lorigan, J., concurred.