[S. F. No. 13381.   In Bank.—January 22, 1931.]

CROCKETT LAND AND CATTLE COMPANY (a Corporation), Appellant, v. AMERICAN TOLL BRIDGE COMPANY OF CALIFORNIA (a Corporation) et al., Respondents.

Courtney L. Moore and Tinning & DeLap for Appellant.

J. E. Rodgers, A. F. Bray and John G. McKean for Respondents.

SEAWELL, J.—The sole question presented by this appeal is as to the relative rights of the parties herein as defined by the decree of condemnation rendered in favor of the assignor of respondent American Toll Bridge Company of California, wherein a strip of land containing seven-tenths of an acre, owned by appellant, was condemned as

and for a viaduct and approach to the Carquinez Straits bridge. Said bridge is a structure of great magnitude and spans the Carquinez Straits, a navigable body of water, at a point between San Pablo and Suisun Bays. Its northerly viaduct and approach rests on Solano County soil and its southerly viaduct and approach are built on Contra Costa County soil. It is with the latter situation that this appeal has to do.

On February 5, 1923, the board of supervisors of Contra Costa County granted to Rodeo-Vallejo Ferry Company a franchise to construct, operate and maintain said bridge and subsequently its rights in the premises were sold and transferred to respondent American Toll Bridge Company of California. Said Toll Bridge Company having been let into the possession of said seven-tenths acre strip upon complying with the decree requiring the payment of $5,000 as the value of said strip, as found by the jury, and the additional sum of $1,000, fixed by the court as a fund to pay any further damages or costs that might be recovered in said proceeding, as well as all damages that might be sustained if for any cause the property should not be finally taken for said public use, built thereon one small residence and moved thereon another and constructed two garages, all of which are located beneath the floor level of the bridge at depths varying from 35 to 120 feet below said floor level. Said two small residence houses are occupied exclusively by its toll-gatherers, watchmen and other employees, who, in addition to the performance of other duties, are charged with the duty of inspection and reporting any structural or serious changes which might threaten the safety of the bridge, as well as protecting it against the acts of maliciously disposed persons or fortuitous events.

Appellant claims the right to occupy said houses on the theory that the condemnation proceedings did not vest the fee of said seven-tenths acre in the condemner. In fact, it is contended that under the provisions of section 1239 of the Code of Civil Procedure, subdivision 1, the Toll Bridge Company had not the right to condemn the fee, but an easement only in said lands and that the occupancy of the whole of said strip is not necessary for the use and enjoyment of said easement. Said statute provides: "The fol-

lowing is a classification of the estates and rights in lands subject to be taken for a public use:

"1. A fee simple, when taken for public buildings or grounds or for permanent buildings, for reservoirs and dams, and permanent flooding occasioned thereby," etc. That the land taken is to be devoted to a public use is not contested. That a massive steel and concrete bridge spanning for a great distance navigable waters of the San Pablo and Suisun Bays built for public use in the manner described in the proceedings is both a public and permanent building within the meaning of said section 1239, would seem to require nothing further to be urged in its defense than a statement of the proposition. That the right of eminent domain may be exercised in acquiring private property for a use such as has been granted by franchise to respondent is made specific by the provisions of section 1238 of the Code of Civil Procedure. It matters but little so far as the right of respondent to occupy said houses is concerned, whether the respondent was given the power to condemn the fee or merely an easement in said seven-tenths acre strip in view of the need that exists for the exclusive occupancy of the whole of said strip. That the condemnation suit was tried upon the sole theory that the fee was sought rather than an easement is made manifest by the pleadings and the proceedings had upon trial. The complaint in said proceedings alleges the necessity of "*acquiring* the herein described lands; . . . " "The whole of said land is and will hereafter be necessary for the construction, maintenance and operation of said bridge approach." The prayer is for a judgment condemning and taking said lands as described for a public use and for the determining of the *value of said land*. (Italics supplied.) The verdict of the jury reads: "We the jury in this case hereby assess the value of the 7 acre tract involved in this action at the sum of Five Thousand Dollars, $5,000." Nothing was said about acquiring a lesser interest than the fee and the sum of $5,000 awarded to appellant as the value of a precipitous seven-tenths of an acre of land situate on a wide stretch of the bay shore would indicate that the jury understood that they had appraised the full value of the fee. The court found that the use for which said strip of land was condemned and taken was a

public use, to wit, the construction, operation and maintenance of a toll-bridge for the transportation of vehicular, freight, pedestrian and other traffic and for furnishing transportation to the public generally, and it was necessary as and for an approach to said bridge. The judgment makes mention that the issue of the value of the land sought to be condemned was submitted to the jury and approves the value as fixed by the jury.

The final order of condemnation was filed October, 1923. Appellant accepted the $5,000 award and costs, and neither moved for a new trial nor appealed from the judgment. After a lapse of three and a half years, it filed its complaint praying that it be restored to possession of said strip of land without an offer on its part to return said sum of $5,000, or any part thereof.

The trial court found that said strip of land was, in the condemnation proceeding condemned in fee and that on April 22, 1924, the award and costs were accepted by the appellant herein and the judgment has become final; that said bridge had been fully completed and was in full operation at the time the instant action was commenced; that said bridge is a permanent building within the meaning of section 1239 of the Code of Civil Procedure and a public building within the meaning of the provisions of the Political Code; that the proper safe-guarding, care and operation of said bridge requires that the owners and operators of the bridge have the exclusive occupancy of said strip of land.

The judgment which followed did not make special mention of the fee, but adjudged the respondent Bridge Company to be entitled to the sole and exclusive occupancy of said strip of land until the expiration of the franchise granted to respondent by the board of supervisors of Contra Costa County, at which time it will become the property of the counties of Contra Costa and Solano, state agencies, subject to the right of the state to acquire it prior to the day on which the franchise expires. ■ The law is that where the statute in terms provides for the condemnation of lands for public use, it will be construed to authorize the taking of the fee. (*McCarty* v. *Southern Pac. Co.*, 148 Cal. 211 [82 Pac. 615].) The same rule would apply to pleadings and judgments.

■ Apart from the question as to the ownership of the fee, there can be no doubt that the respondent is entitled to the exclusive occupancy of the entire strip upon which there are erected six or more massive towers and piers, which support the weight of the bridge. It may become necessary to construct other piers or to resort to other methods as a means of strengthening the pier support which carries an enormous overhead tonnage and thereby practically occupy the whole of said seven-tenths of an acre of land. Surely such a right could not be contested. The houses, which are occupied by toll-gatherers, caretakers and others are so located as to give to the occupants a full view of the tower and pier structure for the entire length of the bridge and serve as convenient telephone stations for communicating with the farthest end of the bridge in emergency cases. A part of the electric lighting appliances are located also upon these premises. The occupancy at all hours of said foundation base by said several employees and their families affords a vantage point from which ready and frequent observation may be made of the understructure of the bridge, as well as an opportunity to observe trespassers and said occupancy is not only consistent with the maintenance and operation of a public bridge of the type of the Carquinez Bridge, but it is in the interest of public safety. This court held in *McCarty* v. *Southern Pac. Co., supra,* that the condemnation of an easement for levee purposes gave to the owner of the easement the right to erect and maintain on the levee all buildings or other constructions that may be reasonably necessary or convenient for the use to which it is devoted, or which are adapted to preserve it in good condition for that use.

In *Tucker* v. *Tower,* 26 Mass. (9 Pick.) 109 [19 Am. Dec. 350], an easement was granted for a toll-road. It was held that a residence erected thereon in which the toll-gatherer lived and collected fares was a reasonable use of the easement. The court further said:

"The ground taken by the plaintiff is founded upon a supposed limitation of the right of the corporation to use the surface of the land only for the purpose of travel; but we do not understand their right to be so limited, but that they may make such use of the land below the surface as may be necessary to secure and maintain the proper enjoy-

ment of their franchise; thus, without doubt, posts may be sunk into the earth for the gate to swing upon; and such digging of the soil is justifiable as may be necessary for drains to the road. And we are of the opinion also that a tollhouse may be placed there, and that if convenient, this may be made so as to accommodate the toll-gatherer with a dwelling; and that all things necessary for this may be also lawfully done, such as the cutting down the trees, digging a cellar, well, etc." (*Reading* v. *Davis*, 153 Pa. St. 360 [26 Atl. 62].)

That the fee of said strip was condemned and it was so understood by the parties to the condemnation action there can exist no doubt. If in fact only an easement was obtained, it was an easement which included what are termed secondary easements, that is the right to do such things as are necessary for the proper enjoyment of the easement itself. (*North Fork Water Co.* v. *Edwards*, 121 Cal. 662 [54 Pac. 69]; *Hamaker* v. *Pacific Gas & Elec. Co.*, 59 Cal. App. 642 [211 Pac. 265].)

From any angle the case may be examined, it is plain that the occupancy by appellant of said strip condemned as and for the construction, maintenance and operation of a toll-bridge would be to place an unreasonable and unwarranted limitation upon the rights of said Bridge Company and would seriously interfere with the proper enjoyment of the franchise which had been granted to it.

There is but little, if any, merit in appellant's contentions that it is legally entitled to occupy any portion of said condemned strip.

Judgment affirmed.

Richards, J., Shenk, J., Curtis, J., Preston, J., Langdon, J., and Waste, C. J., concurred.