HOUSER, J.
 

 By act of the legislature of this state, duly approved by the governor thereof (Stats. 1935, p. 1465), authority was conferred upon a commission that purportedly was created by said act to establish “the (a) Southern California prison under the management and control of the state board of prison directors; to provide for purchase or acquirement of farm lands by unconditional gift or use of lands owned by the state therefor; and the construction of build-. ings and other improvements in connection therewith; to provide for the commitment and transfer of prisoners thereto and therefrom; to provide for the equipment, conduct and management thereof; and to make an appropriation therefor ’ ’. To that end, to the commission was delegated the right
 
 *290
 
 to select a suitable site for such prison. In addition thereto, by the terms of section 12 of the act, it was provided that ‘The title to the land shall be taken in the name of the State of California. The commission shall select such farm site and acquire the same by unconditional gift or purchase or if the same cannot be so acquired, may institute condemnation proceedings for the acquisition of the site. ’ ’
 

 In assumed due course, a selection by the commission of certain property that was proposed to become the site of the prison was made; but neither by purchase nor by “unconditional gift” was the commission able to, nor did it, acquire the property from the owner for the state of California. Failing in that regard, for the purpose of acquiring the site for prison purposes, an action in the exercise of the right of eminent domain was commenced by the State of California against the owner of the property. As a part of its answer to the complaint that was filed in the action, and as a defense thereto, the defendant therein alleged that “Plaintiff has no capacity to institute or maintain this proceeding in eminent domain,-in that there is an agency of the State of California especially directed and empowered to institute such proceedings, to-wit, the Special Commission for the selection of a prison site in Southern California, by virtue of Stats. 1935, Chap. 414, Sec. 12.” A motion that was presented by the plaintiff to the trial court to strike such defense from the answer of the defendant was denied; following which, a motion that likewise was made to the trial court by the plaintiff to set the cause for trial also was denied. Thereupon, at the instance of the plaintiff, this court caused its alternative writ of mandate to issue, directed to the trial court, to the effect that it either set said cause for trial, or that on a specified date, it show cause why it had not done so. In response thereto, the respondent to said alternative writ has filed its “return and answer” to the petition, and the cause is now ready for determination by this court.
 

 From the record herein, the fact is disclosed that the allegation by the defendant in its answer to the complaint, to the effect that the plaintiff therein, to wit: the State of California, has no capacity either to commence or to maintain the action, rests upon the foundation that, by the terms of the enabling statute, the right to institute the action was exclusively conferred upon the special commission, the creation
 
 *291
 
 of which was provided for by the terms of the statute. Consequently it is contended by the defendant that the action having been brought, not by the commission, but by the State of California, the incapacity of the latter in the premises is conclusively established. On the other hand, the position of the plaintiff, State of California, is that, notwithstanding the fact that within the body of the statute authority to institute the action was attempted to be conferred upon the special commission, such purported authority is void and of no effect in the face of the additional fact that the title to the act was fatally defective in that nowhere therein, in disregard of the requirements with reference thereto which are contained within the provisions of section 24 of article IV of the Constitution, was either the subject of eminent domain mentioned, or the authority of the special commission to exercise such privilege in any manner set forth.
 

 At the outset, it should be noted that this court withholds its approval of the irregular procedure, or that which may be termed the “short-cut” method which has been pursued by the parties with reference to their apparent purpose to obtain an advance ruling herein on an issue which, if thought desirable by the aggrieved party in the litigation, ordinarily should have been determined on an appeal from the judgment. Regarding proper procedure, it is apparent that ordinarily, in like circumstances, an alternative writ of mandate should riot issue. However, since with the obvious concurrence of all interested parties to the action the matter has been presented to this court, and is now before it for determination, and since the litigation is one in which the public is concerned, the deciding issue will be given consideration.
 

 As hereinbefore has been indicated, the basic question is, considering the fact that by the terms of section 24 of article IY of the Constitution, the statute under consideration was required to “embrace but one subject, which subject shall be expressed in its title”,—were the pertinent words of the title to the statute sufficient to legally authorize the special commission to condemn land,—the title thereof to be “taken in the name of the State of California”?
 

 By the language contained in section 12 of the instant statute specific authority is conferred upon the special commission to “institute condemnation proceedings for the acquisition of the site”. And in substance, by the terms of
 
 *292
 
 subdivision 7 of section 675 of the Political Code, where in appropriate circumstances no other agency of the state has been empowered to institute a condemnation proceeding, the director of finance is authorized to do so “In the name of the State of California”. In the premises, if the special commission, the creation of which is authorized by the terms of the statute, has the power to institute the action, manifestly it takes precedence in that regard over the general power of the State of California, acting through its designated agent, the director of finance.
 

 Reverting to the wording of the title to the statute, as far as is here pertinent it appears that it was “An act to establish the Southern California Prison ... j to provide for purchase or acquirement of farm lands by unconditional gift or use of lands owned by the state therefor; . . . ”
 

 Although concededly the title to the act embraces but “one subject”, it is obvious that in terms it does not purport to authorize or to empower any agency either to institute or to maintain an action in eminent domain to effectuate either or any of the manifest purposes of the statute. It is clear that the objective of the statute was “to establish the (a) Southern California Prison”. That much is expressed in unmistakable terms. Ordinary intelligence would indicate that in order that such an objective be successfully accomplished, for the location of a prison, it would be most desirable that the most suitable site therefor should be obtained; also that in the efficient selection of such a site numerous elements or factors of economic desirability would receive consideration;—for example, general climatic conditions, soil, water supply, availability of gas and electricity, transportation facilities, and distance from the different centers, not only of general supply but also of possible inmates of the prison. In that connection, readily, if not spontaneously, would occur to the “mind” of the thinking public the thought that, after due and careful deliberation, the commission having reached a conclusion regarding the selection of the most desirable site, for any one of various reasons the owner thereof might be averse either to the sale or other disposition of his property even for ordinary uses; but especially with knowledge of the certainty, that if sold to the state, it would be used for prison purposes, would the owner decline or refuse to sell either a part or the whole of his property. In these days when every
 
 *293
 
 one is witnessing the completion of vast construction projects not only by the state but also by the federal government, the inference is so persuasive that its strength 'approaches the force of a conclusive presumption that resistance to the wishes of such agencies is useless, and that eventually governmental forces, although perhaps not unwilling to negotiate with private individuals, nevertheless “take what they want”. In such circumstances, the average citizen would naturally assume that if the state were to insist upon acquiring the property, the only means by which it might accomplish its purpose in that regard would be by the method known as a condemnation proceeding or, “speaking by the book”, by an action in the exercise of the right of eminent domain.
 

 In the consciousness of the situation which ordinarily obtains in the “mind” of the affected public, it may be well to consider the purpose of the constitutional requirement to which reference hereinbefore has been had.
 

 As was declared in
 
 Ex parte Liddell,
 
 93 Cal. 633, 636 [29 Pac. 251]: “The object of the provision (see. 24, art. IV, Const.) is to prevent legislative abuse,—to prevent the passage of acts bearing deceitful and misleading titles. It is intended to protect the members of the legislature, as well as the public, against fraud; to guard against the passage of bills the titles of which give no intimation to the members of the legislature or to the people of the matters contained therein,” (To the same effect, see
 
 In re Werner,
 
 129 Cal. 567, 570 [62 Pac. 97],
 
 Law
 
 v.
 
 San Francisco,
 
 144 Cal. 384, 388 [74 Pac. 1014],
 
 People
 
 v.
 
 Sacramento Drainage Dist.,
 
 155 Cal. 373, 385 [103 Pac. 207],
 
 Kaiser L. & F. Co.
 
 v.
 
 Curry,
 
 155 Cal. 638, 658 [103 Pac. 341],
 
 Estate of Elliott,
 
 165 Cal. 339, 344 [132 Pac. 439],
 
 Moore
 
 v.
 
 Williams,
 
 19 Cal. App. 600, 606 [127 Pac. 509] ,
 
 People
 
 v.
 
 Wong,
 
 61 Cal. App. 497, 503 [215 Pac. 409], and
 
 People
 
 v.
 
 Sterling Refining Co.,
 
 86 Cal. App. 558, 566 [261 Pac. 1080].)
 

 In the light of such declaration of the purposes of the constitutional provision, and having in mind that which might be termed the universal knowledge of the public with reference to the usual means which from “time immemorial” have been employed by sovereignty in acquiring for public use the lands or other property of its private citizens or denizens, to wit, by an action in the exercise of the right of eminent domain, it becomes clear that the title to the act in question
 
 *294
 
 neither adversely affected, nor conld so affect, either any member of the general public, or any member of the legislature, as far as it might deceive, mislead or defraud him or them concerning the authority of the state to condemn any suitable property for “the establishment of the (a) prison in Southern California”.
 

 It also may be noted that included within the title to the act, following the statement to the effect that its purpose is “to establish the Southern California Prison”, the language employed is “to provide for purchase or acquirement of farm lands by unconditional gift or use of lands owned by the state therefor”.
 

 Directing attention to the particular words that occur therein, to wit: “to provide for
 
 purchase”,
 
 it well may be argued that
 
 ‘‘ex proprio vigore”,
 
 such language imports authority not only to acquire lands by bargain and sale agreement for their agreed cash value, by possible exchange of some previously-owned land by the state for other land that might be more suitable for prison purposes, or even by the means that was adopted and sought to be made effective herein, to wit: by means of an action in the exercise of the right of eminent domain. In other words, that the word “purchase” is broad enough to include within its meaning any means other than by descent. The books abound with general definitions of the word “purchase”. In Words and Phrases, volume 7, page 5853, may be found references to many different cases, wherein it is held, respectively, that “ ‘Acquisition by purchase’ includes every mode of taking title except descent or inheritance”; also, “The term ‘purchase’ in its general signification, and which is the legal sense of it, includes all modes of acquiring property except by descent . . . ”. In full accord with such authorities and extending the principle specifically to situations in analogy with that herein presented, in each of several condemnation suits, it has been held that the word “purchase” includes authority to bring a condemnation proceeding. In the case of
 
 United States
 
 v.
 
 Beaty,
 
 198 Fed. 284, the court said: “When used in a statute, the word ‘purchase’ is frequently held to include any method of acquisition other than by descent. (7 Words and Phrases, 5853.) To construe the word here to mean only acquisition by buying, we must assume that Congress had in mind the method of acquisition rather than the general pur
 
 *295
 
 pose to acquire. The mere use of the word ‘purchase’— which may have been used in its technical sense—is not to my mind a sufficient reason for such assumption. If, as we must, we give the members of Congress credit for a reasonable knowledge of human nature, they must be assumed to have known that to restrict acquirement to voluntary sales by the owners would most probably defeat the chief purpose for which the appropriation was made . . . The very purpose of that (first) section was to authorize condemnation whenever, theretofore or thereafter, an act of Congress authorized land to be ‘procured’ for public use.” (See, also,
 
 United States
 
 v.
 
 Whipple Hardware Co.,
 
 191 Fed. 945, and
 
 Trustees of Schools
 
 v.
 
 Berryman,
 
 325 Ill. 72 [155 N. E. 850].)
 

 Again, as is expressly declared, the purpose of the act is “to
 
 establish
 
 the Southern California Prison”. The several dictionary definitions of the word “establish” include the meaning of originating, founding, instituting or creating anything with a view to securing its permanent existence, such as a colony, a state, or “other institution”. And in “establishing” a prison, it is manifest that in a proper and pertinent sense as applied to the subject-matter of the act, many different and sundry things necessarily would require performance. It would seem most improbable that anyone could conceive of the establishment of a modern prison in the absence of at least the construction of suitable buildings for that purpose; and if the existence of such an element in the consummation of the general purpose be conceded, very naturally it would follow that a location or site for the building or buildings would be of paramount necessity;—from which situation, the mind of any interested person would be directed to the several means by or through which a suitable site might be obtained; and as hereinbefore has been indicated, either as a matter of personal experience, or through general reading or observation regarding the construction of state projects, he would at once understand and appreciate the fact that one of the available means to that end would be by or through the procedure commonly known as a condemnation of the property of some private citizen.
 

 It is a well established legal principle that although the power of eminent domain is inherent in sovereignty, nevertheless neither the state itself nor any subsidiary thereof may lawfully exercise such right in the absence of precedent
 
 *296
 
 legislative authority so to do. And equally established is the rule that the agency to which has been delegated the authority to institute a condemnation action has the exclusive power in the premises. In that regard, in the case of
 
 San Joaquin etc. Irr. Co.
 
 v.
 
 Stevinson,
 
 164 Cal. 221, 226 [128 Pac. 924], it is said: “It is conceded by plaintiff that the power of eminent domain is vested in the state, and that no person or corporation can avail himself or itself of that power, even in aid of a recognized public use, unless the state has granted to such person or corporation a right to exercise the power for the particular use proposed. There must be a statute conferring the power, either expressly or by necessary implication ...” To the same effect, see 20 C. J. 885, 887; Nichols on Eminent Domain, volume 1, section 19; also,
 
 Ventura County
 
 v.
 
 Thompson,
 
 51 Cal. 577.
 

 Full recognition by the legislature of this state of the former foregoing rule appears not only within the statute here in question, but also by the general statute to which reference hereinbefore has been had, to wit: subdivision 7 of section 675 of the Political Code.
 

 Furthermore, by judicial interpretation or construction, it has been held that the legislative intent as expressed by it in conferring statutory authority must be strictly pursued.
 
 (Stamford
 
 v.
 
 Worn,
 
 27 Cal. 171;
 
 McCarty
 
 v.
 
 Southern Pac. Co.,
 
 148 Cal. 211 [82 Pac. 615];
 
 City of Los Angeles
 
 v.
 
 Glassell,
 
 203 Cal. 44, 46 [262 Pac. 1084]; Cooley's Constitutional Limitations, 8th ed., p. 1119;
 
 Bensley et al.
 
 v.
 
 Mountain Lake Water Co.,
 
 13 Cal. 306, 307, 315, 316 [73 Am. Dec. 575];
 
 United States
 
 v.
 
 Rauers,
 
 70 Fed. 748, D. C. Ga., and
 
 Wise
 
 v.
 
 Yazoo City,
 
 96 Miss. 507 [51 So. 453, Ann. Cas. 1912B, 377, 26 L. R. A. (N. S.) 1130]; see, also, sec. 387, Lewis on Eminent Domain, 3d ed.)
 

 In other words, unless with reference to the power delegated, the statute be unconstitutional, the action must be commenced and maintained by the agency which has been specially authorized by legislative act to institute it.
 

 Many decisions that heretofore have been rendered by this court attest the rule in substance, that a statute is not within the constitutional inhibition (sec. 24, of art. IV), where it appears that the title to such act affords a clear indication of- the ends that are proposed to be effectuated by the questioned legislation, but which title does not embrace
 
 *297
 
 “an abstract or catalogue” of the entire contents of the act, provided that from a reading of the title it would be apparent to an ordinarily intelligent mind that the details, incidents or methods of procedure, for -which provision is made in the body of the act, are germane to the main purpose of the statute and obviously are necessary to its accomplishment. In the case of
 
 Ex parte Liddell,
 
 93 Cal. 633 [29 Pac. 251], it is said: “In
 
 Abeel
 
 v.
 
 Clark,
 
 84 Cal. 226, 229 [24 Pac. 383], we held it was not necessary that the title of the act should embrace an abstract of its contents. ... It certainly was not intended that the title should be a repetition of the provisions found in the body of the bill; ... If the title contains a reasonable intimation of the matters under legislative consideration, the public cannot complain. . . . Numerous provisions having one general object fairly indicated by the title may be united.
 
 (Montclair
 
 v.
 
 Ramsdell,
 
 107 U. S. 147 [2 Sup. Ct. 391, 27 L. Ed. 431].) When the general purpose of the act is declared, the details provided for the accomplishment of that purpose will be regarded as necessary incidents. . . . The title of the act clearly shows what the legislature intended to accomplish, and the provisions referred to simply conduce to that object; they are auxiliary to and promotive of the main purpose of the act, and have a ‘necessary and natural connection’ therewith. They are germane to the subject stated in the title of the act; ...” Also in
 
 Estate of McPhee,
 
 154 Cal. 385, 388 [97 Pac. 878], the court said: “It is now well settled that the constitutional provision requiring the subject of the act to be expressed in its title must be liberally construed, and that all that is required to be contained therein in order to meet the constitutional requirement is a reasonably intelligent reference to the subject to which the legislation of the act is to be addressed.” It is not necessary that it should “embrace an abstract or catalogue of its contents.” And in the late case of
 
 People
 
 v.
 
 One Ford V8 Tudor Sedan,
 
 12 Cal. App. (2d) 517 [55 Pac. (2d) 908], wherein the constitutionality of the State Narcotic Act was challenged upon the ground that its title did not embrace the subject-matter of the act, the court said: “The title is not required to give the substance of the bill, as that would make it almost as cumbrous as the bill itself and would tend to defeat rather than to accomplish its purpose. Nor need it express all of the details
 
 *298
 
 found in the hody of the act? as the details provided for the accomplishment of the general purpose of an act will be regarded as necessary incidents thereto. So, also, the title need not embrace an abstract or catalogue of the contents of a statute, or consist of an index of all the provisions thereof. It is sufficient if provisions not mentioned in the title are germane to the general subject expressed.” (See, also,
 
 In re Bonds of South San Joaquin Irr. Dist.,
 
 161 Cal. 345 [119 Pac. 198],
 
 Wheeler
 
 v.
 
 Herbert,
 
 152 Cal. 224 [92 Pac. 353] ,
 
 Evans
 
 v.
 
 Superior Court,
 
 215 Cal. 58 [8 Pac. (2d) 467],
 
 Coachella Valley County Water District
 
 v.
 
 Stevens,
 
 206 Cal. 400 [274 Pac. 538] ,
 
 Estate of Wellings,
 
 192 Cal. 506 [221 Pac. 628], and
 
 People
 
 v.
 
 Standley,
 
 126 Cal. App. 739, 748 [15 Pac. (2d) 180].)
 

 With reference to general principles of constitutional law, judicial decisions abound with declarations to the effect that all presumptions and intendments favor the validity of statutes; that mere doubt by the judicial branch of the government as to the validity of a statute will not afford a sufficient reason for a judicial declaration of its invalidity, but that statutes must be upheld as constitutional unless their invalidity clearly, positively, and unmistakably appears.
 

 So tested, and especially in consideration of the views hereinbefore expressed, this court experiences no hesitancy in declaring, as it now does, that, as far as the issue here presented is concerned, the statute in question is not properly subject to the objections or either of them that have been urged by petitioners herein, with the consequence that each of the several rulings that were made by the lower court and to which the attention of this court has been directed, should be and are approved;—from which it follows that the alternative writ of mandate that hereinbefore has been caused to issue, should be and it is discharged.
 

 Waste, O. J., Edmonds, J., Seawell, J., Langdon, J., and Shenk, J., concurred.
 

 Rehearing denied.