THE TRUSTEES OF SCHOOLS OF TOWNSHIP 39, etc., Appellees, *vs.* JOHN B. BERRYMAN *et al.* Appellants.

*Opinion filed February 16, 1927—Rehearing denied April 14, 1927.*

SCHOOLS—*price of school site required to be placed on ballot includes compensation in condemnation proceeding.* The maximum estimated price required by paragraph 5 of section 127 of the School law to be placed on the ballot in an election to select a school site applies where the property is to be taken by condemnation and includes damages to property not taken as well as the price of the land taken, and where the price stated on the ballot is less than the total compensation found to be due in the condemnation proceeding the election does not authorize the proceeding and a motion in arrest of judgment should be sustained.

DUNN, DUNCAN and THOMPSON, JJ., dissenting.

APPEAL from the County Court of DuPage county; the Hon. S. L. RATHJE, Judge, presiding.

G. H. BUNGE, for appellants.

CHARLES W. HADLEY, for appellees.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

Appellees, the trustees of schools of township 39 north, range 11 east of the third principal meridian, in DuPage county, filed in the county court of that county their petition to acquire by condemnation a one-acre tract of land for the purpose of erecting thereon a school house for Community Consolidated School District No. 98, in that county. It was alleged in the petition, among other things, that the board of education of that district, on March 29, 1924, at a meeting duly called, adopted a resolution finding that a majority of the voters of the district, at an election for that purpose, authorized the purchase of the parcel of land at a maximum price of $600. Appellants filed an answer to the

petition in the nature of legal objections thereto, alleging that the preliminary steps necessary to entitle appellees to condemn the property in question had not been properly taken, in that the petition calling for an election on the selection of a school site was not shown to have been signed by one-fifth of the legal voters of the district, and that the election was otherwise irregular and insufficient. After a hearing of evidence of legal objections appellants filed a written motion to dismiss the petition on the grounds, among others, that it was insufficient and that necessary parties had not been made parties to the proceeding. The motion to dismiss the petition was denied and the cause proceeded to a hearing before a jury on the value of the property taken and damages to property not taken, the latter question being raised by a cross-petition. The jury returned a verdict finding the value of the property taken to be $500 and fixing the damages to property not taken at $400. Appellants filed a motion in arrest of judgment, and in support thereof pointed out that the verdict of the jury was for a larger sum than was authorized by the election at which the site was chosen. The motion in arrest of judgment was overruled and judgment entered on the verdict. Appellants bring the cause here, seeking a review of the decision of the county court denying their motion in arrest of judgment and also the order denying their motion to dismiss the petition.

The undisputed facts show that the site which is sought to be taken for school purposes is near the village of Downers Grove, in DuPage county. The appellant John B. Berryman, who is in business in the city of Chicago, lives with his wife on premises of which the tract in question forms a part. Their home comprises valuable improvements such as are common to a modern country home. The land sought to be taken is at the southwest corner of the junction of Highland avenue and Butterfield road. Highland avenue extends north and south along the east side

of the acre of ground sought to be taken. Butterfield road extends east and west along the north boundary of the tract and crosses Highland avenue at that point. The house of appellants is situated about seven hundred feet west of the proposed site for a school house.

It appears by the record that the board of education of Community Consolidated School District No. 98, pursuant to a petition which its records show was signed by more than one-fifth of the legal voters of said school district, called an election to vote upon the proposition of selecting a new school house site. Thereafter there was presented to the school board the petition of ten legal voters asking that the property in question be voted upon at the election, fixing the maximum cost thereof at $600. The record shows that other sites were likewise submitted, and that at the election held on the 8th of March, 1924, the site in question received the largest vote and was declared to have been adopted as the site for the new school building.

On the hearing before the jury the testimony concerning the value of the property taken, together with damages to property not taken, covered a wide range. The highest amount for land taken and damages to land not taken was $2000, and the lowest was placed at $1000. One witness testified that the value of the land taken was $500 and damages to land not taken $500, and it is urged that for that reason the verdict of the jury is not within the range of the testimony.

We will first consider the objection arising on the motion of appellants in arrest of judgment. As we have seen, the verdict of the jury as to the value of property taken and damages to property not taken amounts to $900. By the ballot used at the election the people were called upon to vote on the site in question "at a maximum estimated cost of not to exceed $600." The proceedings in this case were had under the fifth paragraph of section 127 of the School law, (Smith's Stat. 1925, p. 2325,) which

fixes the power of the school directors to acquire sites for school houses. This paragraph provides that in order to make such purchase lawful the board of education must be first authorized to do so by a majority of all votes cast on the proposition at an election called for such purpose in pursuance of a petition required by the statute, signed either by not less than three hundred legal voters of the district or by one-fifth of all the legal voters of the district. By this paragraph it is provided that the site receiving a majority of votes cast on such proposition shall be the school site for the district, and the board of education is given the right to purchase the site selected for a school house either with or without the owner's consent, by condemnation or otherwise: *"Provided,* that no site shall be placed upon the ballot unless petitioned for by at least ten legal voters of the district; said petition shall recite the location, size and price, or in case condemnation proceedings are contemplated, the maximum estimated price of the proposed site and shall be filed with the clerk of the board of education at least ten days prior to the election. An abstract of the information recited in said petition in reference to the location, size and price of the proposed site shall be plainly printed on the ballot, and in no case shall the board of education purchase any such property for a greater sum than the price or maximum estimated price stated upon the ballot."

It will be noted that the act requires that the petition to place a site upon the ballot shall recite the location, size and price, and in case condemnation proceedings are contemplated, the maximum estimated price of the proposed site, and in no case is the board of education given power to purchase any property for a greater sum than the price, or the maximum estimated price, stated upon the ballot. Whether or not appellants were entitled to a favorable determination of their motion in arrest of judgment depends upon the construction to be given paragraph 5 of sec-

tion 127 of the statute. This paragraph seems not to have been previously before this court on a similar record.

In the construction of statutes it is the rule that the language used should be given its ordinary meaning. It seems clear from a reading of this paragraph that it contemplates two circumstances under which a site shall be put upon the ballot. One is, where the petition to do so shall contain, in addition to a recital of the location and size, a recital of the price. Obviously, the price could only be given where the petitioners have reason to believe, by a statement of the owner, that the property could be purchased without condemnation for the price stated in the petition. The other circumstance under which the ballot shall name a price is, that where the petitioners have reason to believe that condemnation is necessary and where the petitioners contemplate such proceedings in order to secure the property. The act requires in such case that the petition and the ballot state the "maximum estimated price." The limitation on the power of the board of education to purchase such property is found in the language, "and in no case shall the board of education purchase any such property for a greater sum than the price or maximum estimated price stated upon the ballot." This limitation clearly relates to the two conditions previously referred to in stating the price or the maximum estimated price. Under the first situation,—*i. e.,* where the price is stated,—the board has no power to purchase the property at a sum greater than the price recited. Under the second situation,—*i. e.,* one in which condemnation proceedings are contemplated,—the act withholds the power of the board of education to purchase such property for a sum greater than the maximum estimated price.

Counsel contends that this provision does not apply in case of condemnation proceedings but applies only in case of purchase. We are of the opinion, however, that the term "purchase" is here used in a sense sufficiently broad

to cover both voluntary purchase and involuntary purchase by condemnation proceedings, for it will be noted that paragraph 5 of section 127 provides: "and the board of education shall have the right to take and purchase the same for the purpose of a school house site, either with or without the owner's consent, by condemnation or otherwise." It would appear, therefore, that the limitation upon the board to take over this property at a price not to exceed in the one instance the price recited and in the other the maximum estimated price, is binding whether the property be taken over by voluntary purchase or by condemnation proceedings.

Counsel for appellees urges that the estimated price means the price or value of the land taken and does not include damages to land not taken. We cannot agree with this view. The purpose of the election is to get the voice and consent of the people on the amount of the expenditure for the site. Certainly, the expression "maximum estimated price," referring, as it does, to condemnation proceedings, would most naturally seem to refer not only to the value of the property taken but likewise to the damages to property not taken, for both are or may be elements necessary to be considered in determining the amount to be paid for the land. In this instance the people voted to take this site "at a maximum estimated cost of not to exceed $600." The cost to the people as fixed by the jury's verdict is $900.

Counsel for appellees urges that since ten citizens may fix the maximum estimated price at which the people are to vote upon the adoption of a site the board has no power to change it, and therefore a property owner who is fearful that his property may be taken, may with nine of his friends submit his property at a figure which is lower than would be awarded by a jury and thus bar the right of the district to take the property. Regardless of the question of an estoppel in such a case, it might as well be urged, if counsel's construction of this statute is correct, that one

who desired to sell his property to a school district might with his friends submit it at a ridiculously low figure for the purpose of getting favorable consideration of it, though he believed he would be later, in a condemnation proceeding, given a much larger consideration. Arguments of this character might well be addressed to the legislature. It is the duty of the court to administer the law as we find it. We are of the opinion that the provision limiting the power of school districts to expend money for the purchase of a school house site is intended to cover a situation of this kind. While it is true that under such circumstances the board of education is forced to abandon this site or call another election upon which the people may vote upon the proposition of authorizing a larger maximum estimated price for the land, yet the intent of the legislature that the people should say what the cost of the site should be seems clear, and it is our duty to give force to that intention.

The county court erred in denying appellants' motion in arrest of judgment.

Other questions are urged, but as the court should have sustained the motion in arrest of judgment, the consideration of other questions is unnecessary.

The judgment of the county court will therefore be reversed.

*Judgment reversed.*

DUNN, DUNCAN and THOMPSON, JJ., dissenting:

Whatever other errors this record may disclose, the judgment, in our opinion, should not be reversed for the reason assigned in the majority opinion. The trustees of schools had authority to acquire the school house site by the exercise of the right of eminent domain. The manner of the exercise of that right is governed by the act of 1872 "to provide for the exercise of the right of eminent domain," which is contained in chapter 47 of the Revised Statutes. The proceeding is special, statutory and sum-

mary, its sole object is to ascertain the compensation to be paid, and the amount is the only issue. (*Department of Public Works* v. *Sohm,* 315 Ill. 478.) If the land owner desires to contest the petitioner's right to condemn, or if either party desires to raise any issue upon the title to the land, these questions must be presented to the court for determination before the jury is impaneled to ascertain the compensation. (*Lieberman* v. *Chicago Rapid Transit Railroad Co.* 141 Ill. 140; *Chicago and Milwaukee Electric Railroad Co.* v. *Diver,* 213 id. 26.) In this case the appellants did contest the appellees' right to condemn by answer and by motion to dismiss, and the court properly overruled the objections. The cause was submitted to the jury, which fixed the amount of compensation to be paid at $900. The appellants then moved to arrest the judgment on the ground that the petitioner could not pay the amount of the compensation fixed by the jury. This was not an issue for the court to determine. The statute does not require or allow any such inquiry. The court has no authority to render any judgment against the appellees for the payment of the compensation or to inquire into their ability to pay. The statute requires the court, upon the report of the jury, to enter an order authorizing the petitioner to enter and use the property upon payment of the full compensation ascertained. It is true that the petition by which the property here in question was submitted to be voted upon for a school house site fixed the maximum estimated cost at $600, as required by paragraph 5 of section 127 of the School law, and that the board of education was limited in the purchase of the property by that amount. This, however, was not a question for the consideration of the court. The appellees may not be able to make the payment, which is a condition precedent to their taking possession of the property, but they have a right to the judgment required by the statute that they may take possession upon paying the compensation legally ascertained. However, while the board of

education by the vote of the district is limited in the use of the funds of the district in acquiring the title to the property to the maximum estimated price stated on the ballot, there is no prohibition of the acceptance of contributions or donations for the acquisition of title. It is not an impossible thing that a public-spirited person, or several such persons, may make the whole payment for the district or the payment of the excess over the amount authorized by the vote. The board of education may have, or may hereafter secure, an offer of such assistance. It is not a matter for the court to inquire into or adjudicate upon, and the court has no right to deny the petitioners the judgment directed by the statute to be entered.

It has been frequently held that in the exercise of their discretion by public authorities in deciding upon the public necessity or convenience of a proposed improvement, donations of money or land may be made, bonds of indemnity given and releases of damages made, and such bonds and releases are valid and may be enforced. (Mills on Eminent Domain,—2d ed.—sec. 24.) In *Harrington* v. *Harrington,* 1 Metc. 404, it was held that the proceedings of selectmen in laying out a road and awarding damages to the land owner, and the act of the town ratifying the act of the selectmen on condition that a person named should build the road and pay all the expenses of the same and defend the town against all prosecutions, were not void but the road was legally established. The condition was a recognition of and acceding to the agreement of the person named to build the road and pay the expenses, and this was a matter between such person and the town, and the tender of the damages to the land owner before his land was entered on conferred the right of entry upon the land. In *Jones* v. *Andover,* 9 Pick. 106, it was held that there was no objection to a town's having a town-way made, part of the expense of which was to be paid by individuals. To the same effect are *Parks* v. *Boston,* 8 Pick. 25, *Hunter* v.

*Newport,* 5 R. I. 325, and *Cummins* v. *Shields,* 34 Ind. 154. In the last case it was held that there was nothing legally or morally wrong in a party desiring the establishment of a highway taking upon himself a part or all of the burden of the damages assessed by paying them into the treasury for the use of the party entitled to the same, and that the proceeding to lay out and establish the highway was not erroneous by reason of the fact that the damages, or a part thereof, assessed to a remonstrator and ordered to be paid to him out of the county treasury were shown to have been paid into the treasury for the use of the remonstrator by a petitioner for such highway.

There is no statute or public policy of this State which forbids the acceptance of donations of land or money by municipalities or public authorities in aid of the construction of public improvements. (*Department of Public Works and Buildings* v. *Caldwell,* 301 Ill. 242.) On the contrary, section 81 of the Roads and Bridges act expressly authorizes such donations to town and county highway officials and declares agreements in writing promising such donations to be valid and binding contracts. This law has been in force for many years and is a legislative expression of the public policy of the State on this question. The doctrine of these cases is, that in the making of a public improvement, if the burden of the cost and damages is regarded by the public authorities as greater than the public should bear, a part of such cost, or the whole, may be paid by individuals desiring the improvement, and that such payment by interested persons is no ground of objection by those to whom the costs or damages are paid.

In an application by a city to condemn land for a public park the land owner answered, setting up, among other things, that the city was without funds to pay for the land for the reason that the general fund was insufficient to defray the current expenses of the city, that the city was indebted beyond the constitutional limit, and that a park was

325—6

not necessary to the health and comfort of the people. A demurrer to the answer was sustained, but the Supreme Court of Iowa reversed the judgment, holding that the right to purchase or condemn lands for use as a park was conferred upon cities without restriction as to their ability to pay therefor, and the land owner is not concerned in their ability to pay, as he was not required to give credit. If he sold he might demand payment in cash, and if his land was taken by condemnation he could not be disturbed in his title or possession until the value as found was fully paid. It was for the corporation, alone, to determine upon its ability to pay and whether condemnation would be asked, and when asked in the manner provided it was for the courts to grant it upon the terms fixed in the law and not for the owner or the courts to inquire as to the ability or necessity of the corporation, these matters being left to the judgment of the proper officers. As the law required payment in full to be made upon purchase or condemnation, it could not be said that the city incurred any indebtedness thereby, and therefore the plea of the constitutional limitation of indebtedness was no defense. *In re City of Cedar Rapids,* 85 Iowa, 39.

The doctrine is indicated by these decisions, as well as the reason of the case, that it is no defense to condemnation proceedings brought by a municipality to condemn lands for a public improvement that the municipality has no funds with which to pay for the land taken or authority to incur indebtedness for that purpose, and that neither the owner nor the courts have any authority to inquire into the ability of the corporation to pay.